STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
JOSEPH H. GUERIN, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 10, 1985—Decided February 6, 1986.

Before Judges MICHELS, GAULKIN and STERN.

*Thomas S. Smith,* Acting Public Defender, attorney for appellant (*Donald V. Sutton,* Designated Counsel, of counsel and on the brief).

*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney for respondent (*Catherine A. Foddai,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

MICHELS, P.J.A.D.

Tried to a jury, defendant Joseph H. Guerin was convicted of robbery, in violation of *N.J.S.A.* 2A:141–1, robbery while armed,

in violation of *N.J.S.A.* 2A:151–5 and conspiracy, in violation of *N.J.S.A.* 2A:98–1. After the trial court denied defendant's motion for a new trial, he moved to be sentenced under the provisions of the Code of Criminal Justice. The State thereafter moved for the imposition of an extended term of imprisonment, on the ground that defendant was a persistent offender under *N.J.S.A.* 2C:44–3a and *N.J.S.A.* 2C:43–7a(4). The trial court granted both motions, dismissed the conspiracy conviction, merged defendant's conviction for robbery into his conviction for armed robbery and committed defendant to the custody of the Commissioner of the Department of Corrections for an extended term of life imprisonment, with a 25 year period of parole ineligibility. Defendant's motion for a new trial on the ground of newly discovered evidence was denied and this appeal followed.

Defendant, who was not represented by counsel at trial, seeks a reversal of his convictions contending, among other things, that he was not competent to represent himself. The pivotal issue, therefore, is whether defendant knowingly and intelligently waived his Sixth Amendment right to counsel. The record submitted on this appeal does not reveal that the standard for an effective waiver enunciated by the United States Supreme Court in *Johnson v. Zerbst,* 304 *U.S.* 458, 58 *S.Ct.* 1019, 82 *L.Ed.* 1461 (1938) and its progeny was met. Therefore, notwithstanding the overwhelming proof of defendant's guilt, we are required to reverse his convictions and order a new trial.

On December 24, 1981, Cumberland County Jail officers informed the trial court that defendant, who was then incarcerated, "had verbalized a suicide threat and was acting in a bizarre manner within his jail cell." The court was further advised that defendant "appeared to be hallucinating." Based on this information, the trial court ordered that jail officials transport defendant to the Trenton Psychiatric Hospital, Vroom Building, for a psychiatric evaluation.

Following defendant's admission, he was examined by Dr. Porzio, a clinical psychiatrist in the Forensic Section. The

doctor diagnosed defendant as having an "affective disorder, bipolar disorder, single episode, manic, with psychotic features" and a "personality disorder, antisocial type." He characterized defendant's prognosis as "guarded" and commented that defendant "require[d] continued psychiatric care and treatment and [was in] need of possibly Lithium therapy following a Lithium workup." Finally, Dr. Porzio was of the opinion that, because "[i]t [was] questionable ... whether this individual [was] capable of cooperating with his attorney in his own defense," defendant was "not capable of proceeding and [was] incompetent to stand trial at [that] time." On January 8, 1982, defendant was discharged from the hospital and returned to the Cumberland County Jail.

Relying on Dr. Porzio's report, on January 25, 1982, defendant's attorney moved to have defendant re-examined by a psychiatrist to determine his competency to stand trial. The trial court denied the motion, concluding that defendant was competent to stand trial. The trial court also denied defendant's *pro se* motion to conduct his own defense, in part, stating:

I have not declared you incompetent to stand trial. I declared you incompetent to represent yourself.

The trial court thereupon ordered assigned counsel to try the case, explaining:

That is one of the reasons why I felt that he should not be representing himself. He's under medication. He's competent to stand trial without any question. Competent that he knows what these proceedings are about. That's the legal standard. He is not competent in view of medication and in view of his prior mental illness and in view of his somewhat bizarre actions to handle the case as an attorney *pro se*. He should have competent counsel and you are qualified and you are competent and I've seen you in action and you'll do well for him. You're doing it, not him.

On January 28, 1982, defendant's attorney moved for reconsideration of both his motion to have defendant examined by a psychiatrist and defendant's *pro se* motion to represent himself. Alternatively, defendant's attorney moved for a stay of trial pending this motion for leave to appeal from the court's rulings of January 25, 1982. During reargument, for the first time

defendant informed the trial court, his defense counsel, and the prosecutor that he had been examined by Dr. George, a psychiatrist at the guidance center in Millville, on the preceding Tuesday, at the request of a prison nurse.

The trial court thereafter telephoned Dr. George, who confirmed that he had, in fact, examined defendant and that, in his opinion, defendant was competent to stand trial. Dr. George reported to the trial court that defendant

was dressed in jail clothes, all protected, coherent most of the time. At times he was illogical, some flight of ideas are still present. There was some grandiose delusions. Appropriate mood was somewhat elated. He denied any hallucination. He was oriented to time, place and person. His memory is intact. His intellectual functioning is about average. His insight is limited. Judgement is also limited. I made a diagnosis of bipolar schizoid affective disorder.

Following this telephone conversation, the trial court sought to resolve the conflicting opinions of Dr. Porzio and Dr. George by ordering that defendant again be transported to the Trenton Psychiatric Hospital for evaluation. On January 29, 1982, Dr. Elizondo, another clinical psychiatrist at the hospital, examined defendant and found that he had "the mental capacity to cooperate with his counsel in the preparation of his defense and [that] he [was] able to stand trial." Reasoning that Dr. Elizondo's opinion confirmed the opinion of Dr. George, the trial court found defendant legally competent to stand trial. The trial court also granted defendant's *pro se* motion to conduct his own defense, provided that standby counsel was present at all times during the trial to assist defendant as required. The trial commenced on February 2, 1982, with defendant conducting his own defense, in the presence of standby counsel.

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, guarantees an accused the right to have the assistance of counsel in order to protect his fundamental right to a fair trial. *Strickland v. Washington,* 466 U.S. 668, 104 *S.Ct.* 2052, 80 *L.Ed.*2d 674, 691 (1984); *Faretta v. California,* 422 *U.S.* 806, 807, 95 *S.Ct.* 2525, 2557, 45 *L.Ed.*2d 562, 566 (1975); *Gideon v. Wainwright,* 372 *U.S.* 335, 339–340, 83 *S.Ct.* 792, 793–794, 9

*L.Ed.*2d 799, 802 (1963); *Powell v. Alabama,* 287 *U.S.* 45, 66, 53 *S.Ct.* 55, 63, 77 *L.Ed.* 158, 169 (1932); *State v. Fusco,* 93 *N.J.* 578, 583 (1983); *State v. Sugar,* 84 *N.J.* 1, 15–16 (1980). In addition, Article 1, paragraph 10 of the New Jersey Constitution guarantees defendants in state courts the right to counsel, as well. *State v. Fusco, supra,* 93 *N.J.* at 583; *State v. Sugar, supra,* 84 *N.J.* at 15–16. The federal guarantee of the right to counsel has been found to arise from a "recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned Counsel." *Johnson v. Zerbst, supra,* 304 *U.S.* at 462–463, 58 *S.Ct.* at 1022, 82 *L.Ed.* at 1465–1466.

The New Jersey Supreme Court has expressed similar considerations. In *Rodriguez v. Rosenblatt,* 58 *N.J.* 281, 295 (1971), it was stated that "[t]he importance of counsel in an accusatorial system such as ours is well recognized. If the matter has any complexities the untrained defendant is in no position to defend himself and, even where there are no complexities, his lack of legal representation may place him at a disadvantage." Consequently, since the assistance of counsel is necessary to ensure fairness and due process in criminal proceedings, a convicted defendant can not suffer imprisonment unless counsel was available to him at every "critical" stage of the adversarial process. *Kirby v. Illinois,* 406 *U.S.* 682, 688–689, 92 *S.Ct.* 1877, 1881–1882, 32 *L.Ed.*2d 411, 417–418 (1972); *State v. Sugar, supra,* 84 *N.J.* at 16. *See also State v. McCombs,* 81 *N.J.* 373 (1979).

The Sixth Amendment also guarantees a defendant the right to conduct his own defense, provided that he knowingly and intelligently waives his right to counsel and is able and willing to abide by rules of procedure and courtroom protocol. *McKaskle v. Wiggins,* 465 *U.S.* 168, 172, 174, 104 *S.Ct.* 944, 948, 949, 79 *L.Ed.*2d 122, 130 (1984); *Faretta v. California, supra,* 422 *U.S.* at 835, 95 *S.Ct.* at 2541, 45 *L.Ed.*2d at 581; *Johnson v.*

*Zerbst, supra,* 304 *U.S.* at 464, 58 *S.Ct.* at 1023, 82 *L.Ed.* at 1466. *See also State v. McCombs, supra,* 81 *N.J.* at 378; *State v. Davis,* 45 *N.J.* 195, 198–199 (1965). The court, however, has the responsibility of ensuring that a defendant's choice of self-representation is made knowingly and intelligently with an awareness of the dangers and disadvantages inherent in defending himself. In *Faretta v. California, supra,* the United States Supreme Court emphasized that:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. (citations omitted). Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." (citation omitted). [422 *U.S.* at 835, 95 *S.Ct.* at 2541, 45 *L.Ed.*2d at 581–582].

The determination as to whether a waiver of the right to counsel has occurred must be based upon the particular facts and circumstances of each case, including the background, experience and conduct of the defendant. Courts will indulge every reasonable presumption against the waiver of fundamental constitutional rights and will not presume their loss by acquiescence. Therefore, in deciding a waiver of counsel issue the court is required to:

> investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered. [*Von Moltke v. Gillies,* 332 *U.S.* 708, 723–724, 68 *S.Ct.* 316, 323, 92 *L.Ed.* 309, 321 (1948) ].

In *United States v. Welty,* 674 *F.*2d 185 (3d Cir.1982), the Court of Appeals for the Third Circuit further explained the court's obligation in ruling on such applications, as follows:

> The mere "fact that an accused may tell [the court] that he is informed of his right to counsel and desires to waive his right does not automatically end the judge's responsibility." (citation omitted). "A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances," (citation omitted), and only after bringing home to the defendant the perils he faces in dispensing with legal representation. After undertaking such an inquiry, "whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." *Johnson v. Zerbst, supra,* 304 *U.S.* at 465, 58 *S.Ct.* at 1023. Thus, while we do not require a detailed listing of advice similar to that mandated for guilty plea proceedings conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, *see, e.g., United States v. Carter,* 619 *F.* 2d 293 (3d Cir.1980), a defendant's waiver of counsel can be deemed effective only where the district court judge has made a searching inquiry sufficient to satisfy him that the defendant's waiver was understanding and voluntary. [674 *F.*2d at 189].

*See also State v. Cole,* 204 *N.J. Super.* 618, 623–625 (App.Div. 1985).

■ Here, at pretrial hearings, defendant affirmatively requested that he be allowed to represent himself at trial, as he apparently had done since his arrest. Defendant had already proceeded *pro se* at one pre-trial hearing and at another pretrial hearing he had rejected the trial court's suggestion that he retain counsel. Finally, when the trial court was satisfied that defendant was competent to stand trial, it apparently granted defendant's motion to represent himself and appointed standby counsel to assist defendant at trial.[1] The trial court, however, did not place its ruling upon the record until after the *Wade* hearing when it, in part, reasoned that:

> [T]he court is satisfied that the defendant is competent to stand trial which was my finding originally. I felt that he clearly met the criteria of the statute respecting competency to stand trial. And that predicated thereupon, he was [sic] also due to the remission of his mental status, would be capable of following the rules of procedure in the court sufficiently to allow him to

---

[1]This case was tried prior to the decision in *McKaskle v. Wiggins,* 465 *U.S.* 168, 104 *S.Ct.* 944, 79 *L.Ed.*2d 122 (1984), which describes the roll of standby counsel when defendant has knowingly and intelligently waived counsel.

represent himself, subject, of course, to the proviso that a judge always has, where a defendant *pro se,* becomes obstreperous or acts in an inappropriate fashion before the court so the court can modify its order. Mr. Sypniewski is present and will be assisting the defendant and, therefore, the court takes—reserves the right to modify its order at any time that the defendant does not act properly within the courtroom or follow court procedures until [sic] so far in the pretrial matters he has acted properly. He's cross examined witnesses in a competent fashion. He has been courteous to the court. He has not demonstrated those signs of which would [sic] or indications to the court that he would be less than the same when the jury comes back into the courtroom and, therefore, I'll permit him to continue to represent himself.

In our view the trial court misconstrued the nature of the inquiry and the extent of its responsibility in ruling on a defendant's motion to conduct his own defense. The pertinent issue is not whether a defendant is competent to stand trial and "capable of following the rules of procedure". Competency is a subject which must be pursued independent of any question concerning the waiver of counsel. With respect to defendant's decision to represent himself, the issue is whether he knowingly and intelligently waived his right to counsel. This only can be determined by the trial court by conducting a penetrating and comprehensive inquiry of the defendant, as discussed in *Von Moltke v. Gillies, supra, United States v. Welty, supra,* and *State v. Cole, supra. See also Faretta v. California, supra,* 422 *U.S.* at 836, 95 *S.Ct.* at 2541, 45 *L.Ed.*2d at 582; *State v. McCombs, supra,* 81 *N.J.* at 378.

Here, although defendant unequivocally declared that he wanted to represent himself, appeared to be literate and exhibited some knowledge of our rules of procedures, the record submitted on this appeal does not reveal that the trial court at any time made the required inquiries or advised defendant "of the advantages and disadvantages of self-representation," as emphasized by the cases cited above. Stated simply, based on this record we cannot be sure that defendant "[knew] what he [was] doing and his choice [was] made with eyes open." *Adams v. United States,* 317 *U.S.* 269, 279, 63 *S.Ct.* 236, 241, 87 *L.Ed.* 268, 275 (1943).

Accordingly, we reverse defendant's convictions and remand the matter for a new trial. We suggest that on retrial the issue

of defendant's self-representation be handled differently. The trial court should again assign counsel to defendant. If, after consultation with counsel, defendant informs the trial court, on the record and in open court, that he wishes to conduct his own defense, the trial court should conduct a penetrating and comprehensive examination of all of the pertinent circumstances in order to ensure that defendant appreciates the dangers and disadvantages of self-representation. In addition, the trial court should advise defendant, in unequivocal terms, both of the technical problems he might encounter in acting as his own attorney and the risks he takes if his defense efforts are unsuccessful. Thereafter, if defendant still desires to waive his right to counsel, he should be permitted to conduct his own defense with assigned counsel available at all times in the courtroom to advise or aid him, as he may wish. *See McKaskle v. Wiggins, supra.* The trial court, of course, remains free to depart from our suggestions as circumstances may dictate, *see State v. Davis, supra,* 45 *N.J.* at 198–199, but subject to the requirements imposed by the Federal and State Constitutions.

In view of our decision, we need not reach nor decide the other contentions raised by defendant through counsel and in his *pro se* supplemental brief.

Reversed and remanded.