239 N.J. Super. 534 (1990)
571 A.2d 1314
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LARRY SLATTERY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 15, 1990.
Decided March 15, 1990.
*536 Before Judges SHEBELL, BAIME and KEEFE.
Thomas S. Smith, Jr., Acting Public Defender, attorney for appellant (Michael B. Jones, Assistant Deputy Public Defender, of counsel and on the brief).
Robert J. Del Tufo, Attorney General, attorney for respondent (Nancy A. Hulett, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
*537 This appeal presents nettlesome questions concerning whether a defendant, who is not indigent, may be compelled to proceed to trial without counsel where he has failed to exercise due diligence in retaining a private attorney. Also at issue is the adequacy of a curative instruction, directing the jury to ignore a substantial quantity of inadmissible and highly prejudicial evidence. We must additionally consider whether the trial court's allusion in its charge to the possibility that a conviction might be reversed on appeal diluted the jury's crucial sense of responsibility in determining the defendant's guilt.
Defendant was charged in a multi-count indictment with aggravated sexual assault (N.J.S.A. 2C:14-2a(1))[1] and sexual assault (N.J.S.A. 2C:14-2b)[2]. The aggravated sexual assault charge was predicated on allegations that defendant committed acts of sexual penetration on D.W., a child less than 13 years old. The count charging sexual assault alleged that defendant committed acts of sexual contact upon L.W., a child less than 13 years old. At trial, the court determined that the alleged acts of sexual penetration with respect to D.W. occurred after her thirteenth birthday. The court thus instructed the jury to ignore the evidence that had been presented concerning defendant's alleged acts of sexual penetration. The charge was reduced to sexual assault under N.J.S.A. 2C:14-2b based upon the State's evidence that defendant committed acts of sexual contact upon D.W. prior to her thirteenth birthday. The jury *538 found defendant guilty on both counts. Defendant was sentenced to concurrent terms of seven years at the Adult Diagnostic and Treatment Center.
On appeal, defendant contends that (1) he was deprived of his Sixth Amendment right to counsel when the trial court compelled him to be tried without an attorney, (2) evidence of criminal sexual acts beyond the scope of the indictment was erroneously admitted and the trial court's subsequent curative charge was insufficient to eradicate the resulting prejudice, and (3) the trial court's allusion to the possibility of a reversal substantially diluted the jury's sense of responsibility by indicating that its determination was not final or binding. Based upon our review of the record, we are convinced that these arguments have merit and that defendant was denied a fair trial. We are constrained to reverse.
Initially, we recount the facts relating to defendant's attempt to retain an attorney. The indictment was returned against defendant on October 30, 1985. Defendant immediately retained a private attorney and paid him a partial retainer. Although the attorney represented defendant in the course of extensive discovery proceedings, difficulties in their relationship soon developed. Ultimately, defendant filed an ethics complaint which prompted his attorney to move to be relieved as counsel. That motion was heard and granted on April 11, 1986. Although defendant was not present at the hearing, he was advised of the court's action and was instructed to either apply to the Public Defender's Office or obtain another private attorney.
What followed thereafter is not entirely clear from the record. Defendant's application for a Public Defender attorney was denied because he was not indigent and did not satisfy the requisite statutory eligibility requirements. We digress to note that there is no claim here that defendant's application was improperly rejected, and we thus assume that he was not indigent and could afford a private attorney. We note that *539 other evidence in the record supports this conclusion. In any event, it appears that several scheduled trial dates were adjourned at defendant's behest, apparently based upon his promise to retain a private lawyer. Unfortunately, these conferences or hearings were not stenographically recorded. The record is thus entirely uninformative and silent as to whether, at these hearings, defendant was apprised of the pitfalls of representing himself and, if so, the nature and extent of the warnings and advice given.
Ultimately, defendant was given a peremptory trial date of January 11, 1988. On that date, defendant appeared without an attorney. In the ensuing colloquy with the court, defendant was advised generally that he was charged with aggravated sexual assault and sexual assault. However, he was not advised of the elements of those offenses or the allegations upon which the charges were predicated. Defendant was told that he faced a maximum sentence of 30 years if convicted and that it would be wise to obtain an attorney. In response, defendant noted that his prior attorney had retained the money he had sent him and that he could not afford new counsel. Although the trial court noted that it would adjourn the trial if defendant promised to secure a new lawyer, this proposal was rejected. Defendant adamantly insisted that he did not have funds for an attorney, although he acknowledged that he had recently sold his house for $62,900. Expressing substantial reluctance, defendant agreed to represent himself.
We need not recite in detail the sordid facts surrounding the crimes alleged in the indictment. Defendant originally met the mother of D.W. and L.W. in late 1983. Defendant was 61 at the time and lived alone in a small house in Toms River. Despite the disparity in their ages, a relationship developed between the two and she and her five children, including her two daughters D.W. and L.W., moved into defendant's house in January 1984. At the time, D.W. was 12 years old and L.W. was 11 years old.
*540 At trial, L.W. testified that on several occasions, defendant touched her buttocks and chest areas under her clothing. In one instance, defendant apparently masturbated in her presence. Defendant often asked her to perform fellatio upon him, but she refused. According to the witness, these incidents occurred in the living room when no one else was present.
D.W. testified that defendant often touched her breasts, vaginal area and buttocks. In response to questions propounded by the prosecutor, the witness testified that after her thirteenth birthday, defendant forced her to have oral sex with him on approximately 50 occasions. At this point in the witness' testimony, the trial court unaccountably intervened and elicited a more graphic description of these incidents. The record discloses the following questions and answers:
THE COURT: These occasions where he asked you to put his penis in your mouth, when that would happen would his penis be hard or soft?
THE WITNESS: It would be soft.
THE COURT: And how long would that go on generally? How long would it stay in your mouth, generally? Like, did it vary?
THE WITNESS: Not long.
THE COURT: How long, when you say not long?
THE WITNESS: About, like five or something minutes.
THE COURT: And then he would just take it out and that would be it?
THE WITNESS: Yes.
At the conclusion of the State's case, the trial court first realized that all of the evidence pertaining to the sexual penetration of D.W. related to events following her thirteenth birthday. Since there was no evidence of sexual penetration prior to that time, the court reduced the charge to sexual assault and so apprised the jury. Despite the court's conclusion, the jury was initially told that it could consider evidence of oral penetration after D.W.'s thirteenth birthday. Specifically, the court stated:
... I'm going to say to you that you may consider those penetrations [referring to D.W.'s testimony] if you find them to have taken place  okay?  after that date of her birthday as being the type of contact that would be included along with the vaginal or anything of that nature. Do I make myself clear to you?
*541 Following a brief recess, the trial court informed the jury that it had made a mistake and that any sexual assault that had occurred after D.W.'s thirteenth birthday was not to be considered.
Defendant presented no witnesses and elected not to testify. In addition, he gave no summation, but was content to permit the court to apprise the jury of his contention that the children had fabricated the charges in retaliation for his attempts to discipline them.

I.
We first address defendant's claim that he did not voluntarily waive his Sixth Amendment right to counsel. In support of his argument, defendant advances two separate but related contentions. He first asserts that he never expressly articulated a desire to forego his right to counsel and proceed without an attorney. Instead, he merely insisted that he could not afford an attorney other than the one for whose services he had already paid and that the Public Defender had declined representation. It is thus argued that the record is devoid of any express waiver of the right to an attorney. Alternatively, defendant asserts that if his statements on the record can be considered an expression of his desire to represent himself, his attempt to waive his right to counsel was nonetheless ineffective because it was not made voluntarily and with full knowledge of the consequences.
Defendant's initial premise, that the record is barren of any express articulation of the desire to proceed without counsel, requires further scrutiny. While it is true that defendant never manifested a desire to represent himself, it is equally clear that he failed to act expeditiously in seeking counsel of his choice. We again point to the judge's finding, which is not disputed here, that defendant was not indigent and could afford a private lawyer. In that context, defendant cannot have it both *542 ways. He cannot refuse to represent himself but at the same time fail to retain an attorney he can afford.
As we will note more fully later in our opinion, both the Federal and State constitutions guarantee the right to an attorney. A correlative element of that constitutional mandate is the right to secure counsel of one's own choice. Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954). However, the right to retain an attorney "is not absolute." State v. Furguson, 198 N.J. Super. 395, 401, 487 A.2d 730 (App.Div. 1985), certif. den. 101 N.J. 266, 501 A.2d 933 (1985), and "cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive [judges] of their inherent powers" to manage and control the business before them. Smith v. United States, 288 F. 259, 261 (D.C. Cir.1923). Consequently, "[a] defendant desiring to exercise the right to choose his own counsel must do so with reasonable diligence." State v. Furguson, 198 N.J. Super. at 401, 487 A.2d 730. Although an accused has the right to the assistance of counsel, that right can better be defined in terms of a fair opportunity to secure and consult an attorney of his choice. State v. Reddy, 137 N.J. Super. 32, 35, 347 A.2d 545 (App.Div. 1975); see also State v. Yormark, 117 N.J. Super. 315, 340-341, 284 A.2d 549 (App. Div. 1971), certif. den. 60 N.J. 138, 286 A.2d 511 (1972).
A defendant cannot be permitted to play a "cat and mouse" game, thereby placing the trial judge in a position where, in managing the business of the court, he appears to be arbitrarily depriving the accused of counsel. United States ex rel. Davis v. McMann, 386 F.2d 611, 618-619 (2d Cir.1967), cert. den. 390 U.S. 958, 88 S.Ct. 1049, 19 L.Ed.2d 1153 (1968). Our system of justice is replete with choices facing a defendant charged with a crime, but at some point a decision must be made. In other words, a defendant undoubtedly has the right to secure counsel or represent himself, but it is nevertheless within the court's inherent power to compel him to choose between these courses. In a similar vein, a court may reasonably *543 insist that a decision must be made within a reasonable time frame. This is not to suggest that there should be an arbitrary or inelastic calendaring of cases without due regard for the opportunity of the defendant to secure counsel or decide to represent himself. Instead, a trial judge should "avoid the Scylla and Charybdis of extremes." United States ex rel. Carey v. Rundle, 409 F.2d 1210, 1215 (3d Cir.1969), cert. den. 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970).
Here, the trial judge exercised admirable patience in affording the defendant the opportunity to seek counsel or decide to represent himself. The record does not reflect a myopic insistence upon expeditiousness in the face of a justifiable request for a delay. The evidence abounds the other way. Defendant was properly put to his choice. Whether or not he expressly articulated a desire to forego counsel, his actions, or more accurately his omissions, bespoke a waiver of his right to an attorney. His failure to retain an attorney after being afforded ample opportunity to do so manifested a decision to represent himself.
It is not enough, however, that defendant was accorded a reasonable opportunity to decide whether to secure a lawyer or defend himself. The question remains whether defendant "knowingly and intelligently" waived his right to counsel. McKaskle v. Wiggins, 465 U.S. 168, 172, 104 S.Ct. 944, 948-949, 79 L.Ed.2d 122, 130 (1984). Although the "knowing" and "intelligent" waiver standard has generally been applied in the context of a voluntary and expressed relinquishment of the right to counsel, we are of the view that essentially the same criterion should be applied in cases where the accused fails to retain an attorney in a timely manner. Stated differently, in both situations the defendant must be made aware of the consequences of his decision.
We commence our analysis with the well-recognized principle that the right to counsel in a criminal case constitutes a vital ingredient of due process, tracing its paternity to the landmark *544 case of Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). See Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Since very early times, New Jersey has given strong recognition to an accused's right to counsel. Rodriguez v. Rosenblatt, et al., 58 N.J. 281, 285, 277 A.2d 216 (1961). Such a guarantee has been included in our organic law since 1776. See N.J. Const. (1776), Art. XVI; N.J. Const. (1844), Art. I, par. 8; N.J. Const. (1947), Art. I, par. 10. New Jersey was perhaps the first state to direct by legislation that where an indictment has been returned against a defendant, he shall be assigned to counsel without cost. See Act of Mar. 6, 1795 (Paterson, Laws, 162 (1800)).
The right to an attorney, like other protections embedded in the Constitution, may nevertheless be waived. Indeed, the Sixth and Fourteenth Amendments guarantee a defendant the right to conduct his own defense. McKaskle v. Wiggins, 465 U.S. at 172, 104 S.Ct. at 949, 79 L.Ed.2d at 130; Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581 (1975). In light of "[t]he importance of counsel in an accusatorial system such as ours," Rodriguez v. Rosenblatt, et al., 58 N.J. at 295, 277 A.2d 216, however, the courts will "indulge [in] every reasonable presumption against the waiver" of this constitutional right. State v. Guerin, 208 N.J. Super. 527, 533, 506 A.2d 743 (App.Div. 1986). Where an accused elects to waive his right to an attorney, it is incumbent upon the court to insure that his choice of self-representation has been made knowingly, intelligently and with a full awareness of the dangers and disadvantages inherent in such a course. Faretta v. California, 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581-582. As aptly stated by the United States Supreme Court, "[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be aware of the dangers and disadvantages ... so that the record will establish that `he knows what he is doing and his choice is made with eyes open.'" Ibid., quoting Adams v. United States ex rel. *545 McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268, 275 (1943). In United States v. Welty, 674 F.2d 185 (3d Cir.1982), the Court of Appeals for the Third Circuit further explained the obligation of a trial judge in ruling on such applications in the following terms.
The mere `fact that an accused may tell [the court] that he is informed of his right to counsel and desires to waive his right does not automatically end the judge's responsibility.' (citation omitted). `A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances,' (citation omitted), and only after bringing home to the defendant the perils he faces in dispensing with legal representation. After undertaking such an inquiry, `whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.' Johnson v. Zerbst, supra, 304 U.S. [458] at 465, 58 S.Ct. [1019] at 1023 [82 L.Ed. 1461]. Thus, while we do not require a detailed listing of advice similar to that mandated for guilty plea proceedings conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, see, e.g., United State v. Carter, 619 F.2d 293 (3d Cir.1980), a defendant's waiver of counsel can be deemed effective only where the district court judge has made a searching inquiry sufficient to satisfy him that the defendant's waiver was understanding and voluntary. [674 F.2d at 189].
In a long line of decisions and in the context of varying factual settings, our courts have applied these principles with unwavering firmness. See, e.g., State v. Fusco, 93 N.J. 578, 591, 461 A.2d 1169 (1983); State v. Kordower, 229 N.J. Super. 566, 577, 552 A.2d 218 (App.Div. 1989); State v. Guerin, 208 N.J. Super. at 535, 506 A.2d 743; State v. Lach, 213 N.J. Super. 466, 470, 517 A.2d 882 (App.Div. 1986); State v. Cole, 204 N.J. Super. 618, 625, 499 A.2d 1030 (App.Div. 1985); State v. Abbondanzo, 201 N.J. Super. 181, 184, 492 A.2d 1077 (App.Div. 1985); State v. Gale, 226 N.J. Super. 699, 703-704, 545 A.2d 279 (Law Div. 1988). Cf. State v. Sugar, 84 N.J. 1, 15-16, 417 A.2d 474 (1980); State v. McCombs, 81 N.J. 373, 384-385, 408 A.2d 425 (1979); State v. Stein, 70 N.J. 369, 384, 360 A.2d 347 (1976).
These protections recognize the obvious but important truth that "the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty...." Johnson v. Zerbst, 304 U.S. 458, 462-463, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461, *546 1465-1466 (1938). Without the guiding hand of counsel, a defendant may lose his freedom because he does not know how to establish his innocence. Powell v. Alabama, 287 U.S. at 69, 53 S.Ct. at 64, 77 L.Ed. at 170. Trained counsel is also necessary to vindicate fundamental rights that receive protection from rules of procedure and exclusionary principles. State v. Sugar, 84 N.J. at 15-16, 417 A.2d 474. Where the doctrine supporting those rights "has any complexities the untrained defendant is in no position to defend himself." Id. at 16, 417 A.2d 474, quoting Rodriguez v. Rosenblatt, et al., 58 N.J. at 295, 277 A.2d 216.
These considerations militate strongly in favor of exercising great caution in determining whether a proposed waiver of counsel satisfies constitutional standards. Within the context of the potential pitfalls of self-representation, it has been said "the court must make certain by direct inquiry on the record that defendant is aware of `the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'" State v. Kordower, 229 N.J. Super. at 577, 552 A.2d 218, quoting Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309, 321 (1948). We do not suggest that a complete and detailed forecast of all issues that might potentially arise at trial must be given as a prerequisite to a valid waiver. We recognize, for example, that a thorough analysis of all lesser-included offenses might well be impossible prior to trial. No specific litany is required in every case. The point to be emphasized, however, is that the defendant must be apprised of the difficulties of self-representation in terms sufficient to enable him to intelligently decide which course to choose.
Applying these principles, we cannot fairly say that the trial court's perfunctory questioning of the defendant satisfied constitutional standards. Although defendant was advised that he *547 was charged with "aggravated sexual assault and sexual assault," he was not apprised of the legal elements of these crimes or possible lesser-included offenses. Indeed, the record supports the conclusion that he was not aware of the significant distinction between penetration and contact and the statutory age requirements with respect to the victims. A description of the crimes charged in terms of their legal nomenclature added little to defendant's understanding. In a similar vein, while defendant was advised of the maximum cumulative sentence with respect to the charges, he was not told of the possible applicability of the sex offender sentencing provisions. Likewise, defendant was not apprised of potential defenses. We understand from our review of the pretrial discovery proceedings that both victims were "neurologically" and "perceptually impaired." The record is generally incomplete regarding the extent of this "impairment" and any possible psychological sequlae associated with it. It is entirely possible, however, that this information could have had a bearing on the victims' credibility. The record is barren of any evidence that defendant was aware of this subject or its potential for use in his defense. We cannot say on the uninformative record submitted to us that evidence pertaining to the mental state of the victims would have been admissible. The point to be stressed, however, is that defendant was apparently ignorant of this information and the subject was never explored.
Based on the record before us, we are not assured that the trial court engaged in the "searching and painstaking inquiry" our cases and those of the federal courts have long required. State v. Abbondanzo, 201 N.J. Super. at 185, 492 A.2d 1077. See also McMahon v. Fulcomer, 821 F.2d 934, 944-946 (3d Cir.1987); United States v. Balough, 820 F.2d 1485, 1487-1490 (9th Cir.1987); United States v. Welty, 674 F.2d 185, 189-193 (3d Cir.1982); United States v. McFadden, 630 F.2d 963, 969-973 (3d Cir.1980), cert. den. 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981). The principal thrust of the trial court's comments pertained to defendant's financial ability to obtain a *548 private attorney. Although the trial court repeatedly urged defendant to secure a lawyer, the record does not reveal that it at any time made the required inquiries or advised Slattery in detailed terms of the advantages and disadvantages of self-representation.
This deficiency is all the more disturbing, and its ramifications more acute, because defendant is not a well-educated or a highly sophisticated individual. Indeed, defendant's psychological profile discloses that he functions at a "low average" range of intelligence with an IQ of 86. Nor was defendant a "career criminal," whose background, experience and familiarity with the criminal justice system might reasonably manifest a clear understanding of the significance of a waiver of counsel. State v. Cole, 204 N.J. Super. at 625, 499 A.2d 1030. See also United States v. Balough, 820 F.2d at 1488-1489; United States v. McDowell, 814 F.2d 245, 248-252 (6th Cir.1987), cert. den. 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987); United States v. Hafen, 726 F.2d 21, 24-26 (1st Cir.1984), cert. den. 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984). The record reflects that defendant was a first offender with no prior criminal history.
Finally, the dismal performance of defendant in attempting to defend himself at trial, although by no means dispositive, surely gives us pause. In that respect, we note that in many ways the proceeding here was not a conventional trial. As acknowledged by the trial court, this was almost a charade. In his feeble attempt to cross-examine the State's witnesses, defendant inadvertently elicited highly damaging evidence. As we will point out shortly, defendant was silent when the State introduced extremely prejudicial "other crime" evidence far beyond the scope of the allegations set forth in the indictment. Defendant did not call defense witnesses, close to the jury, submit appropriate requests to charge or object to the trial court's instructions. We glean from the record the distinct impression that defendant was wholly bewildered by the proceedings. Our description of the proceedings in State v. Wiggins, 158 N.J. Super. 27, 385 A.2d 318 (App.Div. 1978), is equally *549 apt here. "What we observe in this record is not a trial, but an ex parte, nonadversarial ... proceeding, not unlike a grand jury [presentation]." Id. at 31, 385 A.2d 318.
We note that the trial court failed to follow the procedure long recognized by our case law, requiring the court to assign "stand-by" counsel to aid and advise a pro se litigant. See, e.g., State v. Sinclair, et al., 49 N.J. 525, 552, 231 A.2d 565 (1967); State v. Davis, 45 N.J. 195, 199, 212 A.2d 19 (1965); State v. McCombs, 171 N.J. Super. 161, 168-169, 408 A.2d 434 (App.Div. 1978), aff'd. 81 N.J. at 373, 408 A.2d 425; State v. Wiggins, 158 N.J. Super. at 31-35, 385 A.2d 318. See also McKaskle v. Wiggins, 465 U.S. at 176-188, 104 S.Ct. at 950-956, 79 L.Ed.2d at 132-139; Tuitt v. Fair, 822 F.2d 166, 169 (1st Cir.1987), cert. den. 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987). Of course, we recognize that defendant was not indigent. However, the trial court could have assigned an attorney to act as standby counsel and made appropriate provisions for counsel's compensation in reasonable installments. State v. Lach, 213 N.J. Super. at 471, 517 A.2d 882. Cf. State v. Rush, 46 N.J. 399, 410, 217 A.2d 441 (1966). We do not suggest that assignment of stand-by counsel would have cured an otherwise ineffective waiver. Clearly, it would not. We merely note this point in passing, because our examination of the record discloses that defendant did not receive a fair trial. Rather, he was left foundering in an uncharted sea.
Our experience indicates that the Sixth Amendment issue raised here arises with some degree of frequency. We offer the following guidelines:
(1) A non-indigent defendant must be afforded a reasonable opportunity to obtain an attorney of his choice. If the accused fails to avail himself of that opportunity, the court may compel him to proceed to trial without a lawyer despite the absence of an express waiver.
(2) Before a defendant is forced to go to trial without counsel, he must be fully advised of the consequences. The court *550 must make certain by direct inquiry on the record that, at least in general terms, the defendant is aware of the charges, lesser-included offenses, the range of allowable punishments, possible defenses and circumstances in mitigation. This "searching and painstaking" inquiry must be conducted sufficiently in advance of the peremptory date set for the trial so as to enable the defendant to secure an attorney or decide to represent himself.
(3) Prior to the peremptory trial date, a hearing should be conducted at which the defendant will be called upon to decide what course he wishes to follow. If he has not retained an attorney, stand-by counsel may be appointed with adequate provision for compensation. Of course, the defendant may, if he chooses, retain the attorney selected by the court to serve as his counsel. Obviously, this conference should be conducted sufficiently in advance of the peremptory trial date to enable the attorney to prepare.

II.
As we noted in our recital of the facts, much of the evidence presented at trial pertained to allegations that defendant compelled D.W. to engage in oral sex following her thirteenth birthday. D.W. testified that this occurred on approximately 50 occasions. Following the prosecutor's direct examination of the victim, the trial court engaged in a further detailed inquiry concerning these allegations. Although under some circumstances evidence of prior sexual misconduct has been deemed admissible, see, e.g., State v. Sinnott, 24 N.J. 408, 413, 132 A.2d 298 (1957); State v. Stevens, 222 N.J. Super. 602, 615, 537 A.2d 774 (App.Div. 1988), aff'd 115 N.J. 289, 558 A.2d 833 (1989); State v. Hummel, 132 N.J. Super. 412, 425, 334 A.2d 52 (App.Div. 1975), certif. den. 67 N.J. 102, 335 A.2d 54 (1975); State v. Kuske, 109 N.J. Super. 575, 588, 264 A.2d 227 (App.Div. 1970); State v. Smith, 84 N.J. Super. 452, 459-460, 202 A.2d 461 (App.Div. 1964), certif. den. 43 N.J. 270, 203 A.2d 720 (1964); State v. Hintenberger, 41 N.J. Super. 597, 605, 125 *551 A.2d 735 (App.Div. 1956), certif. den. 23 N.J. 57, 127 A.2d 227 (1956), the State does not contend that D.W.'s testimony concerning compelled oral sex was properly introduced in this case. Even assuming that such evidence might fall within an exception to Evid.R. 55, all parties agree that Evid. R. 4 would bar admission of D.W.'s lurid account in this case.
We must then determine whether the trial court's curative charge obviated the great potential for undue prejudice emanating from the initial admission of this evidence. As we pointed out earlier, the trial court's original attempt to cure the problem was faulty. The court merely told the jury that it could consider this evidence although the acts alleged clearly fell beyond the purview of the charges set forth in the indictment. If anything, the court's pointed reference to "penetrations" that allegedly occurred after D.W.'s thirteenth birthday exacerbated the problem. The question is, therefore, whether the court's subsequent direction to the jury to ignore the evidence repaired the damage wrought by admission of the testimony.
Under the unusual circumstances present, we doubt the capacity of the jury to obey the trial court's instruction to ignore the evidence. Of course, we recognize that the question whether the prejudice flowing from the improper admission of the evidence could be effectively eradicated was, in the first instance, one "peculiarly within the competence of the trial judge, who ha[d] the feel of the case and [was] best equipped" to gauge the effect of the testimony on the jury in the overall setting. State v. Winter, 96 N.J. 640, 647, 477 A.2d 323 (1984). However, defendant was not represented by counsel and no motion for a mistrial was made. We further note that the effect of the evidence was undoubtedly accentuated by the fact that much of the testimony was elicited by the trial court. Moreover, as we noted previously, the trial court's initial attempt to ameliorate the prejudice caused by the admission of the testimony merely highlighted it.
*552 We are thus convinced that the vice was "plainly ineradicable by an instruction to the jury." State v. Witte, 13 N.J. 598, 611, 100 A.2d 754 (1953). We conclude that the lurid details of defendant's sexual misconduct created a mark that was indelible. State v. Winter, 96 N.J. at 640, 477 A.2d 323. The error committed was clearly capable of producing an unjust result.

III.
We also find that the trial court's charge impermissibly diluted the jury's sense of responsibility by indicating that its determination was not final. Following its principal instructions but prior to selection of the alternate jurors, the trial court commented to the jury as follows:
Alright. I thank you. And I should say for the record so far as I am concerned, because he does not possess a law degree, insofar as I am concerned, that any errors, should they affect the verdict in any way, if there  certainly this court would have no objection to any appellate court in the event that there was a conviction, and I'm not going to say whether there should or shouldn't be, ladies and gentlemen, but should there be error, the case would then be retried.
Defendant contends that the effect of this comment was to weaken the jury's sense that its decision as to guilt or innocence was final. We agree.
In our view, the instruction given by the court tended to dilute the jury's sense of responsibility. The comment carried with it the suggestion that the responsibility for any ultimate determination would rest with others. The danger is that the jury might choose to minimize the importance of its role. This problem is especially serious when the jury is told that the alternative decisionmakers are appellate judges. It is plausible that some jurors might be tempted to view an appellate court as having more of a right or duty to determine guilt or innocence than has the jury. Similar instructions have been condemned in the context of capital punishment cases. See, e.g., State v. Rose, 112 N.J. 454, 510-511, 548 A.2d 1058 (1988); State v. Ramseur, 106 N.J. 123, 316, 524 A.2d 188 (1987); State v. Mount, 30 N.J. 195, 214, 152 A.2d 343 (1959). Cf. Caldwell v. *553 Mississippi, 472 U.S. 320, 333, 105 S.Ct. 2633, 2641, 86 L.Ed.2d 231, 242 (1985). While we acknowledge that these decisions are distinguishable, they nonetheless recognize the problem of diluting the jury's sense of responsibility by referring to the possibility of a reversal. In light of the potential prejudice flowing from such a comment and the lack of any conceivable compensating gain, this practice should be discouraged. While the trial court's comment would not, standing alone, require a reversal, the cumulative impact of the errors complained of mandate that course.
The judgment of conviction is reversed and the matter is remanded to the Law Division for a new trial.
SHEBELL, J.A.D., concurring.
I wholeheartedly concur in the outcome because it is quite clear that defendant did not desire to represent himself, did not waive his right to counsel, was not competent to represent himself, and did not obtain a fair trial. I cannot, however, join in the opinion of the majority because in my view a non-indigent defendant who does not take advantage of the reasonable opportunity afforded him to obtain a counsel of his choice merely waives his right to choose the attorney who will represent him. The court should not compel such a defendant to proceed to trial without a lawyer in the absence of an express waiver or refusal by a defendant to accept counsel designated by the court.
The error of the majority is that it fails to recognize that the issue of appointment of counsel in these circumstances implicates not only a question of waiver, but also defendant's due process rights. It is the duty of the court to insure that defendant's trial is consistent with due process. Cf. Barker v. Wingo, 407 U.S. 514, 527, 92 S.Ct. 2182, 2190, 33 L.Ed.2d 101, 115 (1971) (noting possible relationship between speedy trial considerations and due process). Merely because a defendant may be fully advised as to the consequences of his failing to *554 retain an attorney does not mean that he is competent to try his own case or that he desires to try his own case. The appointment of stand-by counsel for a defendant who has not waived counsel or indicated his desire to try his own case is an inadequate remedy. The purpose of stand-by counsel is merely to provide legal advice and assistance to a defendant who chooses to try his own case after a proper waiver. See generally McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).
This defendant and those similarly situated who either do not choose to represent themselves or lack the ability must have a trial which includes defense counsel of full standing. Due process requires no less, as the defendant must be afforded a fair trial. I do not perceive this to be an undue burden upon the court. The cost of court-appointed counsel will be borne by the defendant and imposed upon him by means of a judicially-imposed lien if it is determined that defendant is not indigent.
NOTES
[1] N.J.S.A. 2C:14-2a(1) provides:

An actor is guilty of aggravated sexual assault if he commits an act of sexual penetration with another person under any one of the following circumstances:
(1) The victim is less than 13 years old.
[2] N.J.S.A. 2C:14-2b provides:

An actor is guilty of sexual assault if he commits an act of sexual contact with a victim who is less than 13 years old and the actor is at least 4 years older than the victim.