291 N.J. Super. 441 (1996)
677 A.2d 800
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LEROY WIGGINS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 14, 1996.
Decided June 26, 1996.
*444 Before Judges BAIME, VILLANUEVA, and BILDER.
Roger L. Camacho, Designated Counsel, argued the cause, for appellant (Susan L. Reisner, Public Defender, attorney; Mr. Camacho, of counsel and on the brief).
Daniel I. Bornstein, Deputy Attorney General, argued the cause, for respondent (Deborah T. Poritz, Attorney General, attorney; Mr. Bornstein, of counsel and on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
A jury found defendant guilty of possession of cocaine (N.J.S.A. 2C:35-10a(1)), possession of heroin (N.J.S.A. 2C:35-10a(1)), possession of heroin with intent to distribute (N.J.S.A. 2C:35-5a(1) and b(3)), receiving stolen property (N.J.S.A. 2C:20-7), and possession of a firearm by a person convicted of robbery (N.J.S.A. 2C:39-7b). On the weapons conviction, defendant was sentenced as a persistent offender to an extended term of twenty years with a ten year parole disqualifier. On the convictions for receiving stolen property and possession of heroin with intent to distribute, defendant was sentenced to terms of five years with two and one-half year parole disqualifiers. The sentences were to run consecutively *445 to each other and to a prison term defendant was serving in Pennsylvania. The remaining convictions were merged.
On appeal, defendant contends (1) his motion for a new trial was improperly denied, (2) he was denied his Sixth Amendment right to counsel at the hearing on his motion for a new trial, (3) the trial court erroneously denied his motion to suppress evidence, (4) his custodial statements were involuntary and should have been excluded, (5) his prior convictions were remote and should not have been admitted for impeachment purposes, (6) the trial court erred by refusing to sever the count charging possession of a firearm by a person convicted of robbery, (7) the prosecutor's delay in supplying him with a certificate of operability respecting the firearm found in his possession denied him a fair trial, (8) "other crimes" evidence was erroneously admitted, (9) his automobile was improperly seized, and (10) the sentences imposed were manifestly excessive. We agree that the trial court erred by compelling defendant to represent himself in his motion for a new trial. Defendant's remaining arguments (points three through ten) clearly lack merit. R. 2:11-3(e)(2).

I.
The facts were hotly disputed at trial. The State's evidence disclosed that on November 17, 1992, police officers from Atlantic City and Galloway Township obtained a warrant from a Superior Court judge to search the premises located at 617 County Boulevard in Galloway. The residence at that location belonged to defendant's parents. In addition to authorizing a search for "[a]ny controlled dangerous substance," the warrant specifically authorized the search of "Leroy Doe" and "Peanut Doe."
The warrant was issued on the basis of an affidavit submitted by Detective Brett Foster of the Atlantic City police. In that affidavit, Foster related that during the week of November 3 to November 9, 1992, he had received information from an informant, whose reliability had been demonstrated in the past, that narcotics were being sold at the residence by "two black males in their 40's *446 named Leroy and Peanut...." During the same week, the police conducted a "controlled buy" in which the informant purchased heroin from Peanut (later identified as defendant's brother, Isaac) in the presence of defendant. Finally, the officer stated in the affidavit that he personally conducted a surveillance of the property in the course of which he observed several people visiting the house, remaining for a brief period of time, and then leaving. In the officer's opinion, such behavior was "indicative of narcotics activity."
At approximately 8:30 p.m. on the evening of November 17, the officers executed the warrant. As they approached the driveway, they observed defendant and two other people attempting to leave in a 1977 Cadillac. Several officers stopped the vehicle, ordered the occupants to exit, and searched them. The search of defendant's person yielded two packages of cocaine from one of his pants pockets.
While the vehicle's occupants were being searched, a second group of officers forcibly entered the house.[1] The occupants in the house included defendant's elderly parents, several children, and Isaac. Once inside, the police handcuffed the adult males and directed all of the occupants into the living room. Defendant and the other two suspects seized outside were also brought into the house and confined to the living room. As soon as all were present, one of the detectives verbally informed the occupants of their Miranda[2] rights.
The police then proceeded to question Isaac in one of the bedrooms. Following that interrogation, the officers brought *447 defendant into the bedroom by himself. One of the officers told defendant that he was a "target" of the search warrant, at which point defendant stated that he had to be "straight" with them. He then informed the police that he had drugs in his pants. A search of defendant's person revealed twelve packets of heroin hidden in the waistband of his underwear.
Defendant was then returned to the living room, and the police conducted a thorough search of the house. In one of the bedrooms, they found a yellow pad which was subsequently identified through expert testimony as a drug ledger. In a second bedroom, the police recovered a quantity of empty glassine baggies used for packaging drugs and a loaded .45 caliber Ruger handgun hidden under a mattress. After unloading the weapon, one of the officers took it into the living room and asked the occupants about its ownership. Defendant initially denied ownership of the gun. When no one else claimed it, however, the officer threatened to arrest all of the occupants and charge them with unlawful possession of a handgun. At that point, defendant acknowledged that the gun was his. Defendant admitted he had no permit for the weapon and claimed to have purchased it recently from a Hispanic male in Atlantic City for two bags of heroin. Testimony at trial revealed that the weapon had been stolen in August 1992 from an apartment in Paterson, New Jersey.
Defendant's witnesses at trial, including his parents, nephew, and a close friend, claimed that the police never informed the occupants of the house of their Miranda rights. In addition, they contended that defendant was never taken into a bedroom for individual questioning.
Defendant testified in his own defense. He denied being informed of his rights and making any inculpatory statements concerning the drugs. He also claimed the police had no warrant when they entered the premises and had planted the cocaine recovered from his person while he was outside the house. He further asserted the police found the empty glassine baggies in an abandoned vehicle in the backyard. Defendant disclaimed any *448 knowledge concerning the gun. He contended that he admitted owning it only to protect the members of his family, and particularly his parents, from the burdens of arrest and a possible prison term.

II.
We first consider defendant's argument that he was unconstitutionally compelled to represent himself at the hearing on his motion for a new trial. Following the guilty verdict, defendant drafted a motion for a new trial and filed it with the court. The motion raised twenty-two claims of error, including several allegations that defense counsel provided ineffective assistance. At the hearing, defense counsel informed the court that he could not represent defendant on the motion because the efficacy of his legal representation had been challenged. The trial judge then asked defendant if he wished to proceed on the motion pro se. Defendant replied that he wanted to be represented by counsel, although not necessarily by the attorney who had represented him throughout the trial. After being informed by his attorney that no one from the Public Defender's Office would agree to represent him under the circumstances, defendant asked the court to "hear the motion on the basis of the... record that [was] before [it] ..." The judge then proceeded to deny each of defendant's claims. At no time did the court explain to defendant the implications of proceeding pro se or attempt to determine if defendant understood those implications. We conclude that defendant did not knowingly and intelligently waive his right to counsel.
Both the federal and State constitutions guarantee the right to an attorney in a criminal case. U.S. Const. Amend. VI; N.J. Const. Art 1, ¶ 10. The right to counsel "constitutes a vital ingredient of due process, tracing its paternity to the landmark case of Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)." State v. Slattery, 239 N.J. Super. 534, 543-44, 571 A.2d 1314 (App.Div. 1990). Since very early times, New Jersey has given strong recognition to an accused's right to an attorney. See *449 Rodriguez v. Rosenblatt, 58 N.J. 281, 285, 277 A.2d 216 (1971). The guarantee was included in our earliest organic law, see N.J. Const. of 1776 art. XVI, and appeared in our nascent statutes as well. See State v. Slattery, 239 N.J. Super. at 544, 571 A.2d 1314 (citing Act of March 6, 1795 (Paterson, Laws 162 (1800))). The right to counsel recognizes the obvious but important truth that "the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty...." Johnson v. Zerbst, 304 U.S. 458, 462-63, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461, 1465-66 (1938). The assistance of counsel "is essential to ensuring fairness and due process in criminal prosecutions." State v. Crisafi, 128 N.J. 499, 509, 608 A.2d 317 (1992). Other rights afforded to an accused would have little meaning without the benefit of counsel because often they cannot be secured and implemented without the guiding hand of an attorney. Ibid.
Perhaps of lesser practical significance in the constellation of constitutional values is the right of self-representation. To be sure, this right has deep roots in the common law. See State v. Buhl, 269 N.J. Super. 344, 357, 635 A.2d 562 (App.Div.) (citing 3 Halsbury's Laws of England § 1141 at 624-25 (4th ed. 1973)), certif. denied, 135 N.J. 468, 640 A.2d 850 (1994). The notion of compulsory counsel was foreign to the founders of the Constitution, and "those who wrote the Bill of Rights [] surely ... understood the inestimable worth of free choice." Faretta v. California, 422 U.S. 806, 833-34, 95 S.Ct. 2525, 2540, 45 L.Ed.2d 562, 581 (1975). The fact remains, however, that an accused who serves as his own lawyer relinquishes the traditional benefits derived from professional representation by an attorney and inherent in the concept of a fair trial. State v. Gallagher, 274 N.J. Super. 285, 295, 644 A.2d 103 (App.Div. 1994). Although a defendant's choice to represent himself "must be honored out of `that respect for the individual which is the lifeblood of the law[,]'" Faretta v. California, 422 U.S. at 834, 95 S.Ct. at 2541, 45 L.Ed.2d at 581 (quoting Illinois v. Allen, 397 U.S. 337, 350-51, 90 S.Ct. *450 1057, 1064, 25 L.Ed.2d 353, 363 (1970) (Brennan, J., concurring)), our experience indicates that in most criminal prosecutions defendants can better defend with an attorney's guidance than by their own unskilled efforts.
In light of the importance of counsel in our "accusatorial system[,]" Rodriguez v. Rosenblatt, 58 N.J. at 295, 277 A.2d 216, "the courts `indulge [in] every reasonable presumption against the waiver' of this constitutional right." State v. Gallagher, 274 N.J. Super. at 295, 644 A.2d 103 (quoting State v. Guerin, 208 N.J. Super. 527, 533, 506 A.2d 743 (App.Div. 1986)). Our Supreme Court has "`imposed the most rigorous [requirements] on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to [an attorney].'" State v. Crisafi, 128 N.J. at 510, 608 A.2d 317 (quoting Patterson v. Illinois, 487 U.S. 285, 298, 108 S.Ct. 2389, 2398, 101 L.Ed.2d 261, 276 (1988)). We recognize that most of our decisions on the subject relate to a purported waiver prior to the commencement of the trial. See, e.g., State v. Roth, 289 N.J. Super. 152, 673 A.2d 285 (App.Div. 1996); State v. Buhl, 269 N.J. Super. 344, 635 A.2d 562; State v. Slattery, 239 N.J. Super. 534, 571 A.2d 1314; State v. Kordower, 229 N.J. Super. 566, 552 A.2d 218 (App.Div. 1989); State v. Lach, 213 N.J. Super. 466, 517 A.2d 882 (App.Div. 1986); State v. Guerin, 208 N.J. Super. 527, 506 A.2d 743; State v. Cole, 204 N.J. Super. 618, 499 A.2d 1030 (App.Div. 1985); State v. Abbondanzo, 201 N.J. Super. 181, 492 A.2d 1077 (App.Div. 1985). Consequently, the types of information and warnings that must be conveyed to a defendant as prerequisites for a knowing and intelligent waiver, as described in our decisions, have been tailored in recognition of that fact. See State v. Buhl, 269 N.J. Super. at 359, 635 A.2d 562.
To that extent, the precise issue here, which involves a purported waiver of the right to counsel for the purpose of arguing a motion for a new trial following a jury's verdict, is one of first impression. We recognize that the burdens facing a defendant at this late stage of the proceedings might not be as *451 formidable as those confronting him at the outset of the trial. This much conceded, we hold that a trial judge must engage in a searching inquiry with the defendant to determine whether his waiver is being made knowingly and voluntarily. The defendant must be informed of the technical problems he may encounter and of the risks he takes if his motion is unsuccessful. Cf. ibid. He should be apprised that he will be bound by all applicable procedural and evidentiary rules and that his lack of knowledge of the law may impair his ability to successfully argue for a new trial. Cf. ibid. The colloquy we envision will test the defendant's understanding of the implications of the waiver and will provide the appellate tribunal with an objective basis for review. See State v. Crisafi, 128 N.J. at 511, 608 A.2d 317.
The trial court did not follow this course. No attempt was made to determine whether defendant understood the implications of waiving his right to an attorney. In essence, defendant was told that if he pursued his claim of ineffective assistance of counsel he would be required to argue his motion himself without the benefit of an attorney. Defendant was placed in the untenable position of asserting one constitutional right at the expense of another.
We nevertheless recognize the trial court's dilemma. Defendant's attack upon the competence of his trial attorney left the lawyer facing an irreconcilable conflict of interest, at least respecting the Sixth Amendment claim. The problem was accentuated by the Public Defender's rule that a client does not have the right to choose which staff or pool attorney is to represent him. We do not criticize that rule. Indeed, unreasonable and unsupported attempts by disgruntled defendants to discharge their Public Defender lawyers come to us with numbing frequency. The Sixth Amendment and our Constitution guarantee that an individual charged with a crime has the right to an attorney. Our organic law does not command, however, that he be given the attorney of his choice. See State v. Kordower, 229 N.J. Super. at 576, 552 A.2d 218. Nor does it require that his legal representation be changed *452 at his whim. This common sense principle has particular efficacy in the context of a motion for a new trial. Our rules require that, unless it is based on newly-discovered evidence or on the failure of the defendant to waive his or her appearance at trial, such a motion be filed within ten days of the jury's verdict. R. 3:20-2. Neither the parties nor the court may enlarge this time period. R. 1:3-4(c). Our rules clearly envision that such motions be expeditiously made and promptly decided. The sense of urgency created by these rules and the policies that undergird them militate strongly against permitting whimsical changes of representation between the return of the verdict and the date of argument on a motion for a new trial.
We suspect that the issue presented by this case may be of a recurrent nature. We thus recommend that in the future the trial court should sever the defendant's claims of ineffective assistance, preserving them for post-conviction relief proceedings in which a different attorney can be assigned under R. 3:22-6(a), and direct the defense counsel to argue the remaining contentions in the motion. The defendant's dissatisfaction with his trial lawyer generally will not infect the ability of that lawyer to advance the non-Sixth Amendment arguments. The Sixth Amendment contentions can best be presented by way of a petition for post-conviction relief. We note that "[i]neffective-assistance-of-counsel claims are particularly suited for post-conviction review because they often cannot reasonably be raised in a prior proceeding." State v. Preciose, 129 N.J. 451, 460, 609 A.2d 1280 (1992). If the defendant's motion for a new trial is granted, post-conviction proceedings will be unnecessary, and the ineffective assistance of counsel argument will be rendered moot. If the motion for a new trial is denied, defendant's right to appellate review may be preserved by filing a notice of appeal and moving for a remand to the Law Division for post-conviction relief proceedings. See R. 2:9-1.

III.
The Attorney General argues that a remand is unnecessary because all of the twenty-two contentions advanced in defendant's *453 motion for a new trial were frivolous and have now been asserted by defendant's appellate counsel in point one of his overlength brief. We are tempted to adopt this course because most, if not all, of the arguments raised in the motion for a new trial can be decided on the record submitted to us. However, we decline the Attorney General's invitation for several reasons. First, defendant's pro se arguments were poorly articulated and ambiguously phrased. In presenting these contentions to this court, defendant's appellate attorney was bound by the limitations inherent in the arguments advanced below. Second, defendant's present attorney asserts that additional evidence should have been presented at the motion hearing and that a different record should have been made. While we view this nonspecific allegation with some degree of skepticism, we cannot fairly say that it is disingenuous or wholly devoid of substance. We thus remand the matter to the Law Division for reconsideration of defendant's motion for a new trial.
We emphasize the limited contours of the remand hearing we have ordered. At the outset of this opinion, we listed defendant's additional arguments and found that they lacked merit and did not require further discussion. R. 2:11-3(e)(2). We have thoroughly examined the merits of those substantive points. Because these issues have been effectively adjudicated, albeit without comment, defendant is foreclosed from raising them in the context of his motion for a new trial.
The matter is remanded to the Law Division for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] The testimony of the police on this point at the suppression hearing and at trial was wildly inconsistent. One officer stated clearly that the front door of the house was broken down with a battering ram. Another officer stated that, although a ram was ready, it ultimately was not used because the front door was unlocked. All of the defense witnesses who were present in the house at the time of the officers' entry testified that the entry was forcible.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).