216 N.J. Super. 269 (1987)
523 A.2d 672
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH LONG, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 25, 1987.
Decided March 24, 1987.
*271 Before Judges DREIER, SHEBELL and STERN.
John David Healy, designated counsel, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney; John David Healy, of counsel and on the brief).
Barbara H. Dupre, Assistant Prosecutor, argued the cause for respondent (Jeffrey S. Blitz, Atlantic County Prosecutor, attorney; Barbara H. Dupre and Betsy Phillips, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
*272 Defendant appeals his jury conviction of attempted theft (N.J.S.A. 2C:20-2b(2)(d)) as a lesser-included offense of the armed robbery for which he was indicted. He urges the following:

Point One. By denying defendant's application to challenge the grand and petite [sic] jury selection system in Atlantic County, the New Jersey courts have violated his federal and state constitutional rights to due process, equal protection and trial by an impartial jury drawn from a fair cross-section of the community.

Point Two. The trial court erred in failing to charge the issue of entrapment.

Point Three. Defendant did not receive effective assistance of counsel.

Point Four. The trial court erred in failing to grant defendant's motion for acquittal.

Point Five. The defendant's conviction must be vacated for all other errors at the trial.
On November 5, 1984, an Atlantic County grand jury indicted defendant and a codefendant for conspiracy to commit robbery (N.J.S.A. 2C:5-2) (count one); two counts of possession of a weapon (rock and brush) under circumstances not manifestly appropriate for lawful use (N.J.S.A. 2C:39-5d) (counts two and four); two counts of possession of a weapon for an unlawful purpose (N.J.S.A. 2C:39-4) (counts three and five); and armed robbery (N.J.S.A. 2C:15-1) (count six).
Within the time permitted by R. 3:6-2 defendant attempted to file a pro se pleading entitled "Omnibus Pretrial Motions for Relief" in which he alleged, among other things, that the grand jury was not lawfully impaneled. The County Clerk marked the papers "received" on December 3, 1984, but did not file them because of the assignment judge's policy of not accepting pro se motions where a defendant is represented by counsel. Defendant apparently was not notified that his motion was not filed. Defendant and codefendant were initially represented by the same attorney of the Office of the Public Defender.
On January 28, 1985, the day prior to trial, counsel renewed defendant's motion challenging the jury selection process. The trial judge reserved decision and on the first day of trial the *273 court ruled that defendant's challenge was not timely filed and that in any event the decision in State v. Ronald Long, 204 N.J. Super. 469 (Law Div. 1985), was not to be applied retroactively. The court also ruled that the petit jury panel was such that defendant would receive a fair trial.
Defendant's motions for dismissal and/or acquittal, made both at the close of the State's case and after all of the testimony, were denied. At the close of all the evidence, the State moved to dismiss the conspiracy count conditioned on the court charging accomplice liability, which the court agreed to do. Defendant was acquitted of all charges except attempted theft. Defendant's motion for a new trial, which contended the verdict was against the weight of the evidence and challenged the propriety of charging the jury on the lesser-included offense of attempted theft, was denied. The court denied the State's motion to sentence defendant as a persistent offender, and sentenced him to a five year indeterminate term at Yardville.
On October 26, 1984 at approximately 10:40 p.m. a member of the Atlantic City Police Department, acting as a robbery decoy, had a few dollar bills tucked in his shirt pocket and was sitting on a brick wall, 50 feet from the boardwalk, in a parking lot where there was an abandoned parking shed. Plainclothes detectives were hidden in the shed and a canine officer with his dog waited in a darkened area of the parking lot; an unmarked police car completed the decoy scene.
According to the State's case, defendant and codefendant walked down the street from the boardwalk on the same side as the decoy. They stopped, looked around and asked the officer if he wanted to smoke a joint. He ignored them but they asked several times until he said no. After several more attempts to cajole him into smoking, the two took the officer by his arms and started walking him back into the parking lot; however, the officer resisted.
*274 Defendant allegedly picked up a piece of concrete and put it on the hood of the car. The codefendant took it, placed it on the ground in front of the car, approached the decoy and grabbed his tie; the decoy pulled away. The perpetrators returned to the street and looked around. Codefendant next picked up a large brush and defendant took the rock. The two attempted to strike the officer in the head as they demanded his money. The officer fell to the ground and his backups responded and lifted the two off. The assailants broke free and ran but were captured in short order. Defense counsel's cross-examination of the decoy sought to undermine his credibility by demonstrating many discrepancies.
The codefendant was the sole defense witness. He testified that he did not know defendant prior to the night in question. They had met in a park and spent several hours drinking and talking. As they walked down the street a man called over a question which codefendant could not hear, so he crossed the street to find out what he wanted. The man appeared intoxicated and asked for cocaine. Codefendant said he did not have any. He asked the man if he could have the beer which was on the car hood but was told no as it was his last.
Defendant wanted to leave but codefendant wanted to stay. Codefendant asserted that he tried to sell the officer some fake hash and that after he was unsuccessful he grabbed the officer's tie and reached for the money sticking out of his pocket. The decoy allegedly grabbed his arm and pulled him to the ground. Defendant walked over as the other police came and both were arrested.
Defendant, who is black, argues that his Sixth Amendment right to a representative jury has been violated by the "invidious discrimination in jury panel selection...." He asserts that his pro se motion challenging the array should have been deemed timely and that State v. Ronald Long, 204 N.J. Super. 469 (Law Div. 1985), should be applied retroactively despite its holding that the decision is prospective only.
*275 The trial judge noted on the record that 12 to 15% of the petit jury array were black and that defendant did not use all of his peremptory challenges. The judge denied defendant's motion for several reasons. As to the timeliness aspect of defendant's challenge he asserted:
... when persons are represented by Counsel, ... it is not proper for pro se motions to be filed by defendants; ... it must be filed by Counsel. If Counsel  if the defendant-client is not satisfied with his or her attorney with respect to willingness or an agreement to file such a motion, then other Counsel should be sought promptly by that defendant.
Since defendant's motion through counsel was made more than 30 days after the arraignment and the court had rejected defendant's otherwise timely pro se challenge, it ruled that the motion was out of time. The court then quoted from State v. Ronald Long, supra, concerning its prospective application, indicated agreement, and held that "this Petit Jury array has a composition, which will allow this defendant a fair trial."
R. 3:6-2 requires a motion challenging the grand jury to be made within 30 days of the entry of the plea or the service of the complaint, whichever is later, "or within such further time as the court permits." In Long, the court likewise held that a challenge to the petit jury should be made within the 30 day limit unless the court extends the time for good cause shown. 204 N.J. Super. at 482-483. Here, defendant's pro se motion was "received" within seven days of the plea and counsel's formal motion was made within 63 days of the entry of the plea.
The pro se attempt to file the motion should have been honored under these circumstances. Hybrid representation, i.e., pro se representation and that by counsel, is left to the court's discretion. State v. McCleary, 149 N.J. Super. 77, 79-80 (App.Div.), certif. den. 75 N.J. 26 (1977). "The subject is one relating to the function of the trial judge to conduct an orderly trial  a matter traditionally left to his discretionary judgment." Id. at 80. It is apparent that "[s]uch joint action is to be avoided wherever possible." State v. Pratts, 145 N.J. Super. *276 79, 89 (App.Div. 1975), aff'd 71 N.J. 399 (1976). Where defendant moves to dismiss assigned counsel, he may file a pro se merits brief. State v. Smith, 43 N.J. 67, 72-73 (1964), cert. den. 379 U.S. 1005, 85 S.Ct. 731, 13 L.Ed.2d 706, reh'g den. 380 U.S. 938, 85 S.Ct. 945, 13 L.Ed.2d 826 (1965).
We deem a blanket direction to the clerk that no pro se motions are to be filed where a defendant is represented by counsel to be unacceptable. Such an absolute ban leaves no opportunity for the exercise of judicial discretion necessary to dispense justice and afford due process in individual cases. At a minimum defendant and his counsel should have been advised of the clerk's action. Here, although the public defender may have entered a plea for defendant, he was only set forth on the docket sheet as representing codefendant. Defendant tried to explain to the trial judge that the public defender had told him that he might not be able to represent him. The proper exercise of judicial discretion would have recognized the merit of defendant filing a pro se motion. We need not consider the relationship between the time of assignment of counsel and the time limitations of R. 3:6-2.
With regard to the question of the retroactive versus prospective application of Long, we emphasize that no exclusion of any cognizable group in Atlantic County's jury selection process was found. 204 N.J. Super. at 485. It was held that the selection procedure did not meet the statutory requirement of randomness since 40% of the potential jurors had twice the probability of being selected as others. Id. at 479, 485.
The court explained its findings stating:
The shortcoming here does not represent an invidious discrimination based on race, color, creed, national origin, ancestry, matrimonial status or sex.... They simply did not go behind the facially random, that is, unintentional, blind, purposeless or haphazard way in which the computer selection was initiated.... It is only now, that "random" has been defined with new dimension, and the process used in its pursuit dissected and microscopically examined, that the lack of "randomness" is known and understood. [Id. at 488 (citation and text omitted)].
*277 See generally State v. Ramseur, 106 N.J. 123, 212-236 (1987).
In general, there are three factors to be considered when deciding the retroactive-prospective question:
... (1) the purpose of the rule and whether it would be furthered by a retroactive application, (2) the degree of reliance placed on the old rule by those who administered it, and (3) the effect a retroactive application would have on the administration of justice. [State v. Nash, 64 N.J. 464, 471 (1974)].
As recognized in Long, a retroactive rule would have a disastrous effect on the administration of justice. The juror selection process was a "facially random" system even though it did not comport with the judge's test of randomness after a thorough review of the procedure. There would be no purpose served by dismissing indictments pursuant to the grand jury challenge. 204 N.J. Super. at 488. Regarding the petit jury challenge, the Long court determined that retroactive application leaving "the trial courts at the mercy of defendant's election while new jury lists were being prepared, questionnaires mailed and a new computer designed is untenable." Id. at 489-490. It ordered that no new jury lists be prepared under the existing non-random system and held that trials could proceed under the old list since "nullification of past and existing juries would collapse the criminal justice system in Atlantic County." Id. at 490. Further, the trial court determined that defendant's jury could provide him with a fair trial.
We concur that the reform of the jury selection process should have prospective application only. We conclude that defendant has suffered no prejudice by the jury process in effect at the time. See Ramseur, 106 N.J. at 212-236.
Defendant, relying on the pre-Code case of State v. Branam, 161 N.J. Super. 53 (App.Div. 1978), aff'd o.b. 79 N.J. 301 (1979), contends that the trial judge should have charged the jury on the defense of entrapment. Defendant asserts the police decoy set himself up as easy prey and that the crime was manufactured by the police. We hold that defendant has failed to *278 satisfy the requisite objective element of the entrapment defense under the Code as a matter of law. N.J.S.A. 2C:2-12a(2).
N.J.S.A. 2C:2-12 defines entrapment as follows:
a. A public law enforcement official ... perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages and, as a direct result, causes another person to engage in conduct constituting such offense by either:
(1) Making knowingly false representations designed to induce the belief that such conduct is not prohibited; or
(2) Employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.
Under subsection b, a person shall be acquitted of an offense "if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment. The issue of entrapment shall be tried by the trier of fact." N.J.S.A. 2C:2-12b.
The Code's entrapment defense "replaced the prior law of entrapment with a single statutory defense containing both objective and subjective elements." State v. Rockholt, 96 N.J. 570, 579 (1984). II New Jersey Criminal Law Revision Commission, The New Jersey Penal Code: Final Report 77 (1971).
The Court in Rockholt summarized the Code entrapment defense as follows:
First, the defendant must prove that the police conduct constituted an inducement to crime by objective standards or, in the Code's terms, that the conduct by its nature created a "substantial risk" that the crime would be committed by an average person who was not otherwise ready to commit it. The defendant would not satisfy this requirement if the evidence demonstrated that he was unusually susceptible to inducement and that an ordinary person would not have succumbed to the type of inducement to which he had succumbed. Second, the defendant must prove that the police conduct in fact caused him to commit the crime or, in the words of the statute, that the crime was a "direct result" of the police action. The defendant would not satisfy this requirement if the proofs demonstrated that he was predisposed to commit the crime. [96 N.J. at 581].
The decoy operation in question did not create the requisite "substantial risk" necessary to satisfy the objective element of the entrapment test. It would be a sad commentary on our society if the mere presence of a vulnerable individual were to be held capable of inducing an ordinary person to succumb to *279 crime. We cannot through a rule of law condone such conduct at a time when decent persons are looking to the law for guidance and protection. We disagree with the holdings of other jurisdictions to the contrary. See Teague v. State, 472 So.2d 461, 461 (Fla. 1985); Cruz v. State, 465 So.2d 516, 517, 522-523 (Fla.), cert. den. 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed. 2d 652 (1985); Moreland v. State, 101 Nev. 455, 705 P.2d 160, 160-161 (1985).
Since defendant cannot fulfill the objective requirement of entrapment as a matter of law, there was no error in not giving a sua sponte charge on entrapment. Although we need not consider the Code's subjective element in view of our holding, we note that a hurdle defendant would have to overcome would be that he was not predisposed to commit the crime in question. His prior record belies such an assertion. He has a 1980 conviction for robbery and 1981 convictions for larceny, burglary, criminal trespass and escape. Certain of these prior convictions were relevant to defendant's predisposition to commit the offense charged. If they had been shown to this jury, defendant may well have been convicted of armed robbery. See generally State v. Gibbons, 105 N.J. 67 (1987).
Defendant's assertion of ineffective assistance of counsel because of failure to request an entrapment charge must fall as defendant cannot fulfill the requisite objective element of an entrapment defense; thus, any deficiency in defense counsel's performance did not render the trial result unreliable. State v. Fritz, 105 N.J. 42, 58 (1987); Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693, reh'g den. 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). In addition, in view of the potential for exposure of defendant's prior convictions defense counsel cannot be faulted for his failure to request an entrapment charge.
The court denied defendant's motions for judgment of acquittal. R. 3:18-1 requires the granting of a motion to acquit if "the evidence is insufficient to warrant a conviction." The *280 trial judge must deny a motion for acquittal if "viewing the State's evidence in its entirety, be that evidence direct or circumstantial, ..." and giving the State the benefit of all reasonable inferences, "a reasonable jury could find guilt beyond a reasonable doubt." State v. Reyes, 50 N.J. 454, 458-459 (1967). The outcome depended on the issue of credibility and the denials were proper.
Defendant's cumulative error argument pursuant to State v. Orecchio, 16 N.J. 125 (1954) is without basis. R. 2:11-3(e)(2).
We affirm.