289 N.J. Super. 152 (1996)
673 A.2d 285
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
STEPHEN ROTH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 26, 1996.
Decided March 29, 1996.
*155 Before Judges HAVEY, D'ANNUNZIO and CONLEY.
Stephen W. Kirsch, Assistant Deputy Public Defender, argued the cause for appellant (Susan L. Reisner, Public Defender of New Jersey, attorney; Mr. Kirsch, of counsel and on the brief).
Arthur S. Safir, Deputy Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General of New Jersey, attorney; Mr. Safir, of counsel and on the brief).
Appellant Stephen J. Roth, submitted a pro se supplemental brief.
The opinion of the court was delivered by HAVEY, P.J.A.D.
The principal question raised by this appeal is whether defendant's threat to file a motion to set aside a sheriff's sale unless the successful bidder paid him $2,000 constitutes attempted theft by extortion under N.J.S.A. 2C:20-5g. We conclude that it does and accordingly affirm defendant's conviction.
On December 15, 1993, an Ocean County Grand Jury returned Indictment No. I-93-12-01024, charging defendant with second-degree theft by extortion, contrary to N.J.S.A. 2C:20-5g. Defendant's motion to proceed pro se was denied on July 5, 1994. After *156 a four-day jury trial, which commenced on July 11, 1994, defendant was found guilty of second-degree attempted theft by extortion. Thereafter, he was sentenced to a custodial term of seven years.
In his appellate and pro se supplemental briefs, defendant advances four central contentions: (1) defendant's business tactics, issuing legitimate threats to sue to encourage the settlement of a legal matter, are not proscribed by N.J.S.A. 2C:20-5g; (2) N.J.S.A. 2C:20-5g is unconstitutionally vague on its face and as applied to defendant; (3) the trial judge improperly denied defense counsel's request to supplement the model jury instruction with relevant portions of the 1971 Commentary[1]; and (4) the trial judge erred by refusing to permit defendant to exercise his Sixth Amendment right of self-representation.
The State adduced evidence at trial that on June 30, 1992, Thomas Bergstrom, the lone participant in a sheriff's sale, purchased property formerly owned by Maureen Perry for $32,000. According to Ocean County Undersheriff William Sommeling, defendant attended this sale, but did not bid on the property. Sommeling testified that at no time before, during or after the purchase did defendant voice any concern or objection regarding the "conduct" of the sale.
Bergstrom testified that defendant cornered him following the auction and threatened to file a motion to set aside the sale if defendant was not allowed "to get involved." Interpreting defendant's remarks as a demand for money in exchange for an agreement not to file his impending action, Bergstrom admonished defendant to "get out of his face." On July 21, 1992, defendant successfully moved to set aside the sale.[2]
*157 On August 18, 1992, Bergstrom and defendant attended an Ocean County sheriff's sale of property owned by Julia Badolato. Mr. Bergstrom submitted the highest bid, $19,700, on behalf of his father, Carl, while defendant again declined to bid.
Toward the end of August 1992, defendant began phoning Bergstrom's office, but was unable to communicate with him directly until September 1, 1992. In the meantime, Bergstrom informed the Ocean County Undersheriff that defendant was attempting to reach him and expressed a concern that defendant might try to exact money from him by threatening to undo the Badolato sale. On August 31, 1992, the County Prosecutor's Office authorized Bergstrom to record his phone conversations with defendant.
On September 1, 1992, Bergstrom received a telephone call from defendant, during which the men agreed to convene at noon on the grounds of Ocean County Park in Lakewood to discuss the Badolato sale. Bergstrom was outfitted with a recording device for the meeting. At the park rendezvous, defendant demanded $2,000 for a promise not to pursue a motion to set aside the sale.[3] Bergstrom acceded to defendant's $2,000 demand, and thereafter the men arranged a 3:00 p.m. meeting at the Ocean County Library to exchange money and memorialize the agreement. At the library, defendant pocketed Bergstrom's cash and signed a receipt acknowledging payment. Upon exiting the building, defendant was arrested by detectives from the Ocean County Prosecutor's Office.
Defendant first argues that his motion for a judgment of acquittal at the end of the State's case should have been granted. He argues that, considering the State's proofs most indulgently, a *158 reasonable jury "could not have found every element of theft by extortion was proven beyond a reasonable doubt." See State v. Reyes, 50 N.J. 454, 459, 236 A.2d 385 (1967).
N.J.S.A. 2C:20-5 reads in pertinent part:
A person is guilty of theft by extortion if he purposely and unlawfully obtains property of another by extortion. A person extorts if he purposely threatens to:
....
g. Inflict any other harm which would not substantially benefit the actor but which is calculated to materially harm another person.
The State does not dispute that defendant, like any other member of the public, had a right to institute suit to invalidate the Badolato sale. See R. 4:65-5.[4] Instead, it focuses on the narrow question of whether defendant stood to "substantially benefit" by challenging the sale.
Defendant reasons that, as a matter of law, he substantially benefitted by offering to "settle" the Badolato matter. As a "real estate wheeler-dealer," he claims he profited by "playing [economic] hardball" to promote fair competition in the real estate marketplace and to keep competitors, such as Bergstrom, in line. Moreover, at oral argument defense counsel suggested that if defendant had actually filed a motion to set aside the sale, defendant's financial interests would have been well-served because a resale would have provided him with yet another opportunity to bid on the property. We reject these arguments.
*159 Fostering fair competition among members of the real estate foreclosure and investment community is a concept which is far too abstract to constitute a substantial benefit under this statute; it bespeaks of a societal goal, not personal gain. Allowing such a tenuous advantage to fulfill the substantial benefit requirement would simply eviscerate the statute.
Defendant's classification of Bergstrom as a business competitor and his assertion that he could have profited by bidding at a resale are similarly unavailing. Bergstrom ultimately purchased the Badolato tract for $19,700, a sum which included a mandatory $2,000 down payment. Recordings of the conversations between defendant and Bergstrom reveal that defendant was experiencing a shortage of investment capital at the time of the Badolato sale. Thus, there was ample evidence from which the jury could have concluded that, had defendant voided the initial sale, he would not have substantially benefitted from a resale because he did not have the financial wherewithal to bid in good faith. Contrary to defense counsel's insinuation at oral argument, there is scant evidence on the record to show that defendant sought to finance this land. Defendant merely noted in a phone conversation with Bergstrom that he lined up "some good people" to support his endeavor. Because this declaration was both brief and equivocal, any rational trier of fact could have dismissed it as pure posturing. See State v. Brown, 80 N.J. 587, 592, 404 A.2d 1111 (1979) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979)).
The Criminal Code does not define "substantial benefit," nor are there any New Jersey decisions interpreting the phrase. However, the hypotheticals given in the 1971 Commentary, supra, § 2C:20-5 at 229, clearly epitomize the type of behavior intended to be outlawed under subsection g. The Commission notes that N.J.S.A. 2C:20-5g was intended to be a "catch-all" provision, criminalizing "other threats" not specifically covered by preceding subsections:

*160 Examples of situations which might occur and not be covered in other Subsections are: (a) the foreman in a manufacturing plant requires the workers to pay him a percentage of their wages on pain of dismissal or other employment discrimination; (b) a close friend of the purchasing agent of a great corporation obtains money from an important supplier by threatening to influence the purchasing agent to divert his business elsewhere; (c) a professor obtains property from a student by threatening to give him a failing grade.
[1971 Commentary, supra, § 2C:20-5g at 229.]
Aside from receiving the extortionate payments demanded of their victims, the issuers of the threats in the above examples would not substantially benefit by carrying out their respective threats; the professor would not be rewarded by punishing a student with an undeserved failing grade, and the interests of the foreman would not be advanced by terminating or discriminating against an innocent employee. The same holds true here. In the instant case, the jury could have rationally concluded that because defendant had no funds, he would have been unable to bid in good faith on the subject property if the Badolato sale had been vacated. Also, defendant had no protectable interest, legal or otherwise, in the property, which could have been vindicated if the sale had been voided. Moreover, his offer to settle the matter did not require him to surrender any property or economic interest in the parcel as consideration for the $2,000 payment. In short, the threat to file suit was calculated solely to materially harm Bergstrom. The only "substantial benefit" arising out of the transaction inuring to defendant was the $2,000 payment he exacted from his victim.
Defendant alternatively contends that by couching his threat in the form of "an offer to settle a legitimate lawsuit," he circumvents the substantial benefit requirement of the statute, since the 1971 Commentary to N.J.S.A. 2C:20-5 exempts "to sue" from the "list of particular harms which must be threatened in order to come within the offense of extortion." 1971 Commentary, supra, § 2C:20-5g at 227.
The 1971 Commentary acknowledges that a law which included every threat made for the purpose of obtaining property would encompass a significant portion of "accepted economic bargaining." *161 Ibid. (emphasis added). Therefore, certain commercial or economic menaces have been excluded from the purview of the statute, such as threats
to breach a contract, to persuade others to breach their contracts, to infringe a patent or trade mark, to change a will or persuade another to change a will, to refuse to do business or to cease doing business, to sue, to vote stock one way or another. For the most part these are situations in which a private property economy must tolerate considerable "economic coercion" as an incident to free bargaining. Civil remedies are usually adequate to deal with abuse of the privilege.
[Id. at 227-28 (emphasis added).]
We reject the notion that the 1971 Commentary merely requires a threat to assume the guise of a lawsuit to bypass the statute's mandate of a substantial benefit. In our view, before exempting threats otherwise considered illegal under this provision, the Code drafters intended an economic or commercial nexus to exist between the actor who utters these "protected" threats and the underlying transaction.
Here, there was no economic or commercial link between defendant and the underlying real estate transaction. He possessed only the bare right to file a motion to set aside the sheriff sale; without more, the thrust of N.J.S.A. 2C:20-5 precludes him from bluffing or threatening to exercise that right to garner a lucrative "settlement."
This situation also stands in marked contrast to a hypothetical set of facts utilized by defendant at trial. His counsel analogized defendant's threat to file the set-aside motion to a baseball team owner's threat to relocate his team if the owner could not secure a new, publicly-financed stadium. Assuming this owner lacked the financial wherewithal to follow through on his "bluff," defense counsel questioned why such a person would not also be in violation of N.J.S.A. 2C:20-5g. The answer lies in the previously cited paragraph of the Commentary which carves out an exception for certain threats which "would embrace a large portion of accepted economic bargaining." 1971 Commentary, supra, § 2C:20-5g at 227. The hypothetical team owner would be entitled to this exemption because, apart from demanding money in *162 exchange for a promise not to engage in such "hardball" bargaining tactics, a natural economic or commercial nexus exists between the owner of the ball club and negotiations surrounding the movement of the franchise.
We also reject defendant's contention that N.J.S.A. 2C:20-5g is both unconstitutional on its face and as applied to defendant. "A statute is facially vague only if it is vague in all its applications, while a statute is vague as applied only if it is vague when applied to the circumstances of a specific case." State v. Maldonado, 137 N.J. 536, 563, 645 A.2d 1165 (1994). Addressing defendant's facial challenge, we conclude the statute is not "so vague that persons `of common intelligence must necessarily guess at its meaning and differ as to its application.'" Town Tobacconist v. Kimmelman, 94 N.J. 85, 118, 462 A.2d 573 (1983) (quoting Connally v. General Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926)). In our view, the terms "purposely threatens," "substantially benefit" and "materially harm" are plain and unambiguous; they "would not send the average citizen scrambling for a dictionary."[5]State v. Afanador, 134 N.J. 162, 171, 631 A.2d 946 (1993).
We also conclude that the statute is constitutional as applied to defendant because, accepting as true the State's evidence concerning defendant's actions, "the statute clearly extends to the acts that the State alleges defendant committed." Id. at 165, 631 A.2d 946. Indeed, the facts reveal that defendant had ample notice and warning that his behavior would subject him to criminal liability. At various stages of his "negotiations" with Bergstrom, defendant exhibited distinct signs of apprehension. He was wary of discussing terms of a "settlement" by telephone, repeatedly asked Bergstrom if he was "wired up," and ultimately *163 frisked Bergstrom in search of a recording device during their Ocean County Park meeting. Overall, this manifestation of paranoia establishes that defendant was sufficiently aware that his conduct crossed the line between legitimate and illegitimate economic coercion.
Because we have concluded that the language in the 1971 Commentary concerning "protected" threats is inapplicable to defendant's actions, we reject his contention that the trial judge improperly denied his request to supplement the jury charge with the Commentary language. We find no fault in the trial judge's decision to charge the jury, inter alia, with the language of the Model Jury Charge for criminal attempt and N.J.S.A. 2C:20-5g. Model Jury Charges (Criminal) § 2C:20-5. We also approve of the trial judge's decision to instruct the jury regarding sheriff's sales so it could evaluate defendant's actions in a more meaningful light. The judge provided the jury with a thorough explanation of the questions it had to determine, complete with an explanation of the law and how it was to be applied to the material facts of the case. State v. Concepcion, 111 N.J. 373, 379, 545 A.2d 119 (1988). Since the jury instruction was accurate and understandable, it did not deprive defendant of his right to a fair trial. Ibid.
Lastly, defendant challenges the trial judge's decision to deny his application to proceed pro se. Defendant filed a motion to dismiss his assigned counsel, an assistant deputy public defender, and to continue pro se after learning from defense counsel in mid-June 1994 that his trial had been moved up from the Fall 1994 to early July 1994. In a hearing held one day before his scheduled July 6, 1994, trial date, defendant for the first time articulated his reasons for discharging his attorney: counsel lacked the time to develop a solid defense; neglected to issue subpoenas and to file motions to quash the indictment and suppress certain evidence; and failed to "grasp" the facts of the case on account of counsel's unfamiliarity with sheriff sales. Defendant claimed that he could procure twenty witnesses to "shed light on [the case]," whereas counsel, he alleged, failed to compile a witness list. Defendant *164 also maintained he would seek an adjournment to uncover possible incriminating information regarding Bergstrom.
We find that defendant lacked good cause for substituting counsel and continuing pro se because defendant's grievances were either specious or involved disagreement over defense strategy, which our Supreme Court has held, "does not rise to the level of good cause." State v. Crisafi, 128 N.J. 499, 518, 608 A.2d 317 (1992) (citing United States v. Padilla, 819 F.2d 952, 956 (10th Cir.1987)). After concluding that the balance of defendant's complaints were unsubstantiated, the trial judge praised the assistant deputy public defender as "a very capable and experienced trial attorney who has always put his client's interests first." Moreover, defense counsel was prepared to commence jury selection the following day. He assured the trial judge he spent a considerable amount of time preparing for defendant's case and, contrary to defendant's claim, utilized motions he believed were appropriate for the defense.
Moreover, the application to proceed pro se may have been nothing more than an attempt to postpone the trial. In light of the untimeliness of defendant's application, the trial judge ruled that defendant presented no legitimate basis upon which to delay the proceedings. See State v. Buhl, 269 N.J. Super. 344, 364, 635 A.2d 562 (App.Div.), certif. denied, 135 N.J. 468, 640 A.2d 850 (1994). Implicitly, the judge rejected, and properly so, defendant's eleventh-hour contention that counsel's alleged failure to apprise him of his new trial date constituted "good cause" to discharge his attorney and proceed pro se. Thereafter, the judge suggested that defendant had possessed the right to self-representation at least up until two months prior to trial when he chose to apply for and was granted a public defender. With two cases scheduled for trial in the following three weeks, the judge refused to muddle his docket on account of defendant's last-minute request.
"The right of an accused to represent himself, with or without the assistance of counsel, is not so absolute that it must be *165 recognized when to do so would disrupt the business of the court...." State v. White, 86 N.J. Super. 410, 418-19, 207 A.2d 178 (App.Div. 1965); see also Crisafi, supra, 128 N.J. at 517, 608 A.2d 317; State v. Gallagher, 274 N.J. Super. 285, 297, 644 A.2d 103 (App.Div. 1994); Buhl, supra, 269 N.J. Super. at 362-63, 635 A.2d 562; State v. Slattery, 239 N.J. Super. 534, 542-543, 571 A.2d 1314 (App.Div. 1990). A defendant cannot participate in a "cat and mouse game," id. at 542, 571 A.2d 1314, by placing the judge in the "unenviable dilemma" where, in managing the affairs of the court, he appears to be arbitrarily depriving the accused of counsel. Buhl, supra, 269 N.J. Super. at 363, 635 A.2d 562.
A defendant who desires to exercise his right to proceed pro se must do so with reasonable diligence. Id. at 362, 635 A.2d 562; Slattery, supra, 239 N.J. Super. at 542-43, 571 A.2d 1314; State v. Furguson, 198 N.J. Super. 395, 401, 487 A.2d 730 (App. Div.), certif. denied, 101 N.J. 266, 501 A.2d 933 (1985). The efficient administration of justice without unreasonable delay has compelling force and effect. Therefore, trial courts may tightly control their own calendars so that the assignment of cases cannot be manipulated by wily defendants. Ibid.
The trial judge also properly denied defendant's application on the ground that he sought a de facto co-counsel arrangement with the assistant deputy public defender. See State v. Long, 216 N.J. Super. 269, 275, 523 A.2d 672 (App.Div. 1987); State v. McCleary, 149 N.J. Super. 77, 78-80, 373 A.2d 400 (App.Div.), certif. denied, 75 N.J. 26, 379 A.2d 257 (1977). Defendant commented that he and the public defender would make a magnificent "team," conceding, "I don't know all the law, but I'm a pretty good talker." In fact, defense counsel, apparently wary that his client's motion constituted a well-disguised plea for hybrid representation, cautioned that "co-counseling [was] not an alternative."
Although a defendant has the constitutional right to proceed with or without counsel under Faretta v. California, 422 U.S. 806, 819, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562, 572 (1975), the right to hybrid representation may be foreclosed and is to be avoided *166 wherever possible. McCleary, supra, 149 N.J. Super. at 78-80, 373 A.2d 400; see also Long, supra, 216 N.J. Super. at 275, 523 A.2d 672.
In his eighty-eight page pro se supplemental brief, defendant raises the following additional legal arguments:

POINT IV  PROSECUTOR MERCUN'S INSULTING REMARKS DELIVERED BOMBASTICALLY, WAS TO MY GREAT PREJUDICE, AND DENIED MY RIGHT TO A FAIR TRIAL; ALSO THE PROSECUTOR'S RUDENESS, REMARKS, ACTIONS, AND DEMEANOR AT THE GRAND JURY TAINTED THE GRAND JURY PROCESS.

POINT V  A LONE BIDDER (BERGSTROM) WHO IS ENGAGED IN CONSTRCTIVE (sic) FRAUD AT A SHERIFF SALE, OR TAKES ADVANTAGE OF THAT CONSTRUCTIVE FRAUD, SHOULD NOT CLAIM EXTORTION WHEN ONE (MYSELF) IS DAMAGED BY THAT CONSTRUCTIVE FRAUD, AND REQUESTS COMPENSATION. UNDERSHERIFF SOMMELING AND THE LONE BIDDER, THE TWO PRONGS OF CONSTRUCTIVE FRAUD, WERE THE MAJOR WITNESSES AT THE TRIAL AND GRAND JURY.

POINT VI  THE COURT REFUSED TO ALLOW THE DEFENDANT TO BRING TO THE JURY'S ATTENTION ISSUES CONCERNING MOTIVE OF STATE'S WITNESSES TO SHOW BIAS OR THEIR CONSTRUCTIVE FRAUD. THE COURTS REFUSAL DENIED DEFENDANT A FAIR TRIAL.

POINT VII  THE DEFENDANT WAS WRONGFULLY DENIED HIS REQUEST FOR A CHANGE OF VENUE. HIS CONSTITUTIONAL RIGHT TO A FAIR AND IMPARTIAL TRIAL WAS MANIFESTLY DENIED.

POINT VIII  DUE TO INADEQUATE REPRESENTATION DEFENDANT'S CONVICTION MUST BE OVERTURNED AND A NEW TRIAL GIVEN. THERE WAS NO ADVERSARIAL BALANCE.

POINT IX  THE SENTENCE OF THE COURT IS MANIFESTLY EXCESSIVE. THE SENTENCE IS UNDULY PUNITIVE.

POINT X  MY NAMED VICTIM, THOMAS BERGSTROM WAS NOT THE REAL PARTY OF INTEREST, AND DID NOT LEGALLY HAVE THE CAPACITY; COMPETENCY; OR STANDING TO BE HARMED. JUDGE TURNBACH WRONGFULLY AMENDED THE INDICTMENT AND ALLOWED BERGSTROM'S FATHER TO BE CONSIDERED THE VICTIM AND THE ONE HARMED AT MY TRIAL. JUDGE TURNBACH CURED THE FAULTY INDICTMENT BY CREATING AN AGENCY RELATIONSHIP FOR THE BERGSTROM'S IMPROPERLY.

POINT XI  THE STATED HARM AT THE GRAND JURY WAS WRONGFULLY CHANGED BY THE PROSECUTOR AND BY THE JUDGE, THIS CASUAL AMENDING OF THE GRAND JURY PROCESS WAS WRONGFUL AND PREJUDICIAL. PLUS, ANTICIPATED, UNREALIZED PROFITS ON THE FUTURE SALE OF REAL ESTATE, SHOULD NOT QUALIFY AS SUFFICIENT *167 HARM FOR THIS SECOND DEGREE CRIME. THE LONE BIDDER'S VOIDABLE INTEREST COULD BE INFRINGED.

POINT XII  CUMULATIVE ERROR. EVEN IF NONE OF THE GROUNDS SET FORTH ARE OF THEMSELVES SUFFICIENT TO WARRANT A REVERSAL, THE CUMULATIVE EFFECT OF ALL THE ERRORS, IN ITS AGGREGATE, SHALL ENTITLE DEFENDANT TO A NEW TRIAL.
We conclude that these contentions and defendant's supporting arguments are clearly without merit. R. 2:11-3(e)(2); see also R. 3:7-4; Biunno, Current N.J. Rules of Evidence, comment 1 to N.J.R.E. 607 (1995) (citing State v. Hutchins, 241 N.J. Super. 353, 361, 575 A.2d 35 (App.Div. 1990)); Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698, reh. denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); State v. DiFrisco, 137 N.J. 434, 474, 645 A.2d 734 (1994); State v. O'Donnell, 117 N.J. 210, 215-16, 564 A.2d 1202 (1989); State v. Ghertler, 114 N.J. 383, 388, 555 A.2d 553 (1989); State v. Roth, 95 N.J. 334, 364-66, 471 A.2d 370 (1984); State v. Hodge, 95 N.J. 369, 379-80, 471 A.2d 389 (1984); State v. Seaman, 114 N.J. Super. 19, 32, 274 A.2d 810 (App.Div. 1971), cert. denied, 404 U.S. 1015, 92 S.Ct. 674, 30 L.Ed.2d 662 (1972).
Affirmed.
NOTES
[1] II New Jersey Penal Code, Final Report of the New Jersey Criminal Law Revision Commission, § 2C:20-5g, commentary at 228 (1971) (1971 Commentary).
[2] When the Perry parcel was resold on September 28, 1993, Bergstrom was apparently outbid by The First Federal Deposit Insurance Co. (receiver for the First National Bank of Toms River) which acquired the property for $35,000. The facts of the Perry sale were introduced at trial solely under N.J.R.E. 404(b) and were not the subject of an indictment.
[3] Apparently, the notice advertising the sale of the Badolato parcel was defective; the address publicized was 95 Wells Mills Road, but the address recorded on the face of the deed was 147 Wells Mills Road.
[4] The fact that defendant had a "lawful" right to file suit is not dispositive. The 1979 amendment added "and unlawfully" to the first sentence of the statute. See L. 1979, c. 178. As noted by Cannel, New Jersey Criminal Code Annotated, comment 3 on N.J.S.A. 2C:20-5 (1995), "the meaning of the word `unlawfully' is entirely unclear. It is not intended to limit the section to threats to engage in unlawful behavior[,]" since many of the threats criminalized by the statute "would be perfectly appropriate if made without a demand for property." See also 1971 Commentary, supra, § 2C:20-5g at 228 ("The threatened harm need not be `unlawful.'"). Cannel observes: "The additional phrase seems merely to sound a note of caution. The legislature appears to have been alerting the courts to the fact that this section can easily be read too expansively to cover situations in which people are acting in ways tolerated in commercial and personal life." Cannel, supra, comment 3 on N.J.S.A. 2C:20-5.
[5] Courts in other jurisdictions have rejected such vagueness arguments and upheld the constitutionality of similar extortion statutes. See Stein v. Virginia, 12 Va. App. 65, 402 S.E.2d 238, 240-42 (1991); Moore v. Tennessee, 519 S.W.2d 604, 608 (Tenn. Crim. App. 1974).