**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2950-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

FENTON J. CARSTARPHEN, a/k/a
FENTON JU CARSTARPHEN,
GERALD CARSTARPHEN,
MICHAEL WATERS, MIKE FINNEY,
FENNY HOLLINGSWORTH, and
FINNY HOLLINGSWORTH,

     Defendant-Appellant.

_____

Submitted February 11, 2019 – Decided March 11, 2019

Before Judges Fasciale and Gooden Brown.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 16-04-1087.

Joseph E. Krakora, Public Defender, attorney for appellant (David A. Gies, Designated Counsel, on the briefs).

Mary Eva Colalillo, Camden County Prosecutor, attorney for respondent (Kevin J. Hein, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After being found guilty by a jury, defendant appeals from his convictions for second-degree burglary, N.J.S.A. 2C:18-2 (Count One); first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3 (Count Two); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (Count Three); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2) (Count Four); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (Count Five); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (Count Six). We affirm.

I.

Defendant brutally attacked his estranged wife (the victim) almost killing her. Shortly after the indictment, the State moved to admit evidence of "other acts of domestic violence committed by . . . defendant against the victim pursuant to N.J.R.E. 404(b)." The judge allowed the State to admit into evidence a sanitized statement defendant made to an officer, and permitted testimony regarding the victim's tumultuous relationship with defendant as intrinsic evidence. But the judge found statements made by defendant to a different

officer and testimony regarding defendant's prior physical assault of the victim inadmissible under N.J.R.E. 404(b).

Moments before jury selection, defendant advised the judge – for the first time – that he wanted to represent himself. Up to this point, a public defender represented defendant. The State objected specifically to defendant cross-examining the victim himself due to an active final restraining order (FRO). But the State had no objection to defendant proceeding pro se, so long as his public defender cross-examined the victim (using questions proposed by defendant if need be).

After making the proper inquiries, the judge allowed defendant to represent himself, but in a hybrid fashion. He could represent himself in all aspects of the trial, except the cross-examination of the victim. On that point, the judge determined that defendant's public defender would cross-examine the victim. The judge allowed defendant to retain private counsel, if he could afford to do so, but otherwise, the judge stated that his public defender would act as standby counsel. Unhappy with the judge's decision to keep the public defender as standby counsel, defendant then left the courtroom, refused to participate in the trial, and returned to the jail.

After jury selection and opening statements, the public defender moved for a mistrial, arguing that the judge denied defendant's constitutional right to represent himself. The judge denied the motion and concluded that defendant was "attempting to exploit the system." The judge said he refused to allow defendant to "dictate by gamesmanship" how the trial was going to proceed. The trial occurred in defendant's absence.

## II.

We discern the following facts from the evidence adduced at the trial, which demonstrate overwhelming proof of guilt. On the morning of December 11, 2014, the victim opened the door to the mudroom attached to her house when she unexpectedly saw defendant standing there with a meat cleaver in his hand. He said to her, "[o]h, so you want a divorce?" The victim attempted to go to the back door, but she felt "heavy blows" to the back of her head, and fell to the ground. She was able to get outside to the backyard where she screamed for help. As the attack continued outside, defendant put the meat clever in his pocket and took out a folding knife and cut the victim's thigh and attempted to cut her calf. Defendant told the victim they had to go back inside the house; the victim said she could not move, and as defendant went toward her, pretending

4

to help her, he reached down and slit her throat and continued up her face, cutting her lip, nose, and across her left eye.

The victim's neighbor heard the screams, saw the attack, and called 9-1-1. Police arrived and found defendant standing over the victim, who was yelling for help with her hands up and blood coming down her face. The police detained defendant and found the meat cleaver and folding knife. They found a glove and wet pajamas near where the victim was on the ground; the wet pajamas had the odor of lighter fluid. When the police entered the victim's house, they detected the odor of flammable gas, and they noticed it was most potent in the mudroom.

The victim testified at trial. She testified that defendant was argumentative, and when she previously had asked him to leave her home, he told her, "If I'm not living . . . here . . . I'll burn this mother[*****] down." She said that she broke off the relationship and he moved out. She testified that she then filed for divorce, but that he continued to call her and would "pop up" at her work.

A trauma surgeon, who treated the victim for the injuries she sustained in the attack, testified that she had "multiple lacerations of her face, neck, arm, one on her abdomen, several on her thigh, several on her head, left arm . . . [and] a

fracture . . . in her left arm . . . [and] amputation of part of her finger on her left hand." The victim stayed at the hospital for four days, during which she required staples to the injuries on her head, two surgeries, and several blood transfusions.

A forensic scientist from the New Jersey State Police Office of Forensic Science also testified. He examined DNA found on various items recovered from the victim's home and backyard. He found defendant's DNA on a glove found at the scene, and on the knife blade and handle.

The jury found defendant guilty of all counts.[1] After the appropriate mergers, the judge sentenced defendant to an aggregate prison term of fifty years, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.[2] He did so after finding that defendant was a persistent offender under N.J.S.A. 2C:44-3(a).

## III.

On appeal, defendant argues:

---

[1]  The State had previously dismissed a charge of fourth-degree contempt, N.J.S.A. 2C:29-9(b).

[2]  The judge merged Count One, Count Three, Count Four, and Court Five into Count Two, first-degree attempted murder, for which the judge imposed a fifty-year extended prison term in accordance with N.J.S.A. 2C:44-1, with forty-two years of parole ineligibility.

POINT I

THE TRIAL [JUDGE] ERRED WHERE [HE]
DETERMINED THAT DEFENDANT'S RIGHT TO
SELF-REPRESENTATION SHOULD BE HONORED
EXCEPT DURING CROSS-EXAMINATION OF HIS
ACCUSER WHO HAD A RESTRAINING ORDER
AGAINST HIM.

POINT II

THE TRIAL [JUDGE] ERRED WHERE [HE]
DETERMINED AS A MATTER OF LAW THAT THE
SPECIFIC THREATS MADE BY DEFENDANT AND
DIRECTED TOWARD [THE VICTIM] PRIOR TO
THE CHARGED CRIMES WERE INTRINSIC
EVIDENCE.

POINT III

THE TRIAL [JUDGE] ERRED WHERE [HE]
ADMITTED DEFENDANT'S PRIOR THREATS TO
SHOW MOTIVE, PARTICULARLY WHERE [HE]
FAILED TO PROVIDE TO THE JURY A LIMITING
INSTRUCTION AS TO THE PROPER USE.

POINT IV

THE TRIAL [JUDGE] FAILED TO AFFORD THE
PROPER WEIGHT TO THE AGGRAVATING
FACTORS WHERE [HE] DID NOT CONSIDER
NERA'S REAL-TIME CONSEQUENCES.

IV.

Defendant argues that the judge erred by not allowing him to cross-
examine the victim, and instead ordering that defendant's standby counsel voice

7

defendant's questions.

The Sixth Amendment gives a criminal defendant the right to represent himself in a criminal trial, when he "voluntarily and intelligently" elects to do so. State v. DuBois, 189 N.J. 454, 465 (2007) (citing Faretta v. California, 422 U.S. 806, 816 (1975)). When a criminal defendant requests to proceed pro se, the judge must "engage in a searching inquiry" with him to determine whether he understands the implications of the waiver. State v. Crisafi, 128 N.J. 499, 510 (1992). "The defendant 'should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.'" Ibid. (quoting Faretta, 422 U.S. at 835).

However, the right to self-representation is not absolute. State v. Buhl, 269 N.J. Super. 344, 362-63 (App. Div. 1994). For example, "a defendant cannot manipulate the system by wavering between assigned counsel and self-representation." Id. at 362. "Moreover, like any other request for substitution of an attorney, a defendant's decision to dismiss his lawyer and represent himself must be exercised in a timely fashion. The right of self-representation is not a license to disrupt the criminal calendar, or a trial in progress." Ibid.

A-2950-16T4

In granting a defendant the right to represent himself, the trial judge "may appoint standby counsel to assist the pro se defendant." DuBois, 189 N.J. at 466; see also, Faretta, 422 U.S. at 834 n.46 (stating that a State may appoint standby counsel "even over objection by the accused"). Standby counsel acts as a "safety net" to make sure a defendant receives a fair hearing and to allow trial to proceed without undue delays. State v. Ortisi, 308 N.J. Super. 573, 591 (App. Div. 1998). The United States Supreme Court noted that standby counsel may "steer a defendant through the basic procedures of trial . . . even in the unlikely event that it somewhat undermines the pro se defendant's appearance of control over his own defense." DuBois, 189 N.J. at 466 (alteration in original) (quoting McKaskle v. Wiggins, 465 U.S. 168, 184 (1984)).

Furthermore, "hybrid representation" may be granted when a defendant requests to represent himself in only part of the trial, not the trial as a whole. State v. Figueroa, 186 N.J. 589, 594 (2006). Although hybrid or partial representation is ordinarily discouraged, it may be granted in the trial judge's discretion. Ibid. "[W]hether to grant a defendant the opportunity to represent himself in part and be represented by counsel in part rests in the sound discretion of the trial court." Id. at 595. Generally, such representation is granted when the trial judge determines that the trial will not proceed in an orderly manner.

A-2950-16T4

"The subject is one relating to the function of the trial judge to conduct an orderly trial – a matter traditionally left to his discretionary judgment." Id. at 594 (quoting State v. Long, 216 N.J. Super. 269, 275 (App. Div. 1987)).

The Confrontation Clause of the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause provides two types of protections for a criminal defendant: the right to physically face those who testify against him or her, and the right to have his accusers cross-examined before the trier of fact. Pennsylvania v. Ritchie, 480 U.S. 39, 51 (1987). The Confrontation Clause's central purpose is to ensure the reliability of evidence brought against a defendant by testing it under the rubric of four elements: physical presence, oath, cross-examination, and observation of demeanor. Maryland v. Craig, 497 U.S. 836, 845-46 (1990). This right is satisfied when a defendant is able to face his accusers in court and the defense can test the witness's credibility through cross-examination. Id. at 846.

We conclude that the trial judge did not abuse his discretion by allowing defendant to represent himself with the caveat that his public defender cross-examine the victim. First, the judge could have outright denied defendant's request to proceed pro se. As we have previously stated, a defendant's right to

represent himself is not absolute. Buhl, 269 N.J. Super. at 362-63. Defendant made the request on the first day of trial, moments before jury selection began. Earlier in the litigation, defendant had complained that he did not want his first public defender. The Public Defender's Office provided defendant with a new public defender, the one who was prepared to begin the trial on the day defendant decided he wanted to represent himself. As we noted in Buhl, a request to proceed pro se must be timely, and it cannot be used as a stalling tactic. Id. at 362.

Nevertheless, the judge granted defendant's request to represent himself. He simply ordered that defendant's public defender act as the "conduit" for defendant during the cross-examination of the victim. The judge cited Figueroa, 186 N.J. at 594, which grants trial courts the discretion to order hybrid representation. The judge acknowledged that the facts were somewhat different – here defendant did not request hybrid representation, but in Figueroa, the defendant did. But the judge concluded that this difference did not undermine his discretion to order such representation.

We see no abuse of discretion by ordering this "hybrid" representation. Defendant would have been able to represent himself in all aspects of the trial, and he would have had his questions asked of the victim, but standby counsel

A-2950-16T4

would have voiced those questions. The judge explained that because of the FRO and the circumstances surrounding the attack, he would not allow defendant to directly question the victim. Indeed, the judge instructed defendant that he could direct the cross-examination, and that standby counsel would only speak to and approach the victim while on the witness stand. Defendant did not object to having his cross-examination of the victim conducted by standby counsel; he objected to having his public defender as his standby counsel. See Faretta, 422 U.S. at 834 n.46 (stating that a State may appoint standby counsel "even over objection by the accused"); see also Crisafi, 128 N.J. at 517 ("A defendant does not enjoy an unencumbered right to counsel of his or her choice.").

The judge's ruling did not violate defendant's rights under the Confrontation Clause of the Sixth Amendment. Defendant would have been physically present in the courtroom, he would have cross-examined the victim under oath through standby counsel, and the jury would have been able to observe the victim's demeanor. Therefore, he would have effectively cross-examined her face-to-face.

A-2950-16T4

V.

Next, defendant argues that the trial judge erred by admitting prior threats made by defendant to the victim as intrinsic evidence. Defendant asserts that the prior threats were not intrinsic to the crime of attempted murder, and thus, the judge should have undertaken a Cofield[3] analysis and should have provided a limited instruction.

"A trial [judge]'s ruling on the admissibility of evidence is reviewed on appeal for abuse of discretion." State v. Rose, 206 N.J. 141, 157 (2011). But, if the party appealing did not raise an objection to the admission of evidence to the trial court, this court will review for plain error, "only reversing if the error is 'clearly capable of producing an unjust result.'" Ibid. (quoting R. 2:10-2). Here, defendant did not object to the admission of past threats, and therefore, we review for plain error.

When the admissibility of uncharged bad acts is implicated, the court must engage in a Rule 404(b) analysis. Id. at 179. Rule 404(b) provides that

> evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of

---

[3] State v. Cofield, 127 N.J. 328 (1992).

13

mistake or accident when such matters are relevant to a material issue in dispute.

"The threshold determination under Rule 404(b) is whether the evidence relates to 'other crimes,' and thus is subject to continued analysis under Rule 404(b), or whether it is evidence intrinsic to the charged crime, and thus need only satisfy the evidence rules relating to relevancy, most importantly Rule 403." Rose, 206 N.J. at 179. Evidence is intrinsic in two "narrow" categories: (1) "if it directly proves the charged offense"; or (2) if the evidence of "uncharged acts performed contemporaneously with the charged crime . . . if they facilitate the commission of the charged crime." Id. at 180 (quoting United States v. Green, 617 F.3d 233, 248-49 (3d Cir. 2010)).

We may perform a Cofield analysis de novo. If a court does not properly apply Rule 404(b), this court "may engage in its own 'plenary review'" to determine the admissibility of evidence and "to assess whether admission of the evidence was appropriate." Id. at 158; see also State v. Garrison, 228 N.J. 182, 194 (2017) (stating that the Court's review was de novo because the trial court did not perform a Cofield analysis where it found the evidence of prior bad acts to be intrinsic to the charged offense).

"The seminal case in New Jersey on the proper application of Rule 404(b) to evidence of uncharged misconduct is State v. Cofield." Rose, 206 N.J. at 159.

In <u>Cofield</u>, the court established a four-prong test to determine the admissibility of uncharged prior misconduct:

> (1)  The evidence of the other crime must be admissible as relevant to a material issue;
>
> (2)  It must be similar in kind and reasonably close in time to the offense charged;
>
> (3) The evidence of the other crime must be clear and convincing; and
>
> (4) The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [127 N.J. at 338.]

The first prong under <u>Cofield</u> requires that the evidence be relevant – that is, "the evidence must have 'a tendency in reason to prove or disprove any fact of consequence to the determination of the action.'"  <u>Rose</u>, 206 N.J. at 160 (quoting Rule 401).  This standard is "generous" – the evidence will be admitted if it "makes a desired inference more probable than it would be if the evidence were not admitted." <u>State v. Williams</u>, 190 N.J. 114, 123 (2007).  "The evidence must also bear on a material issue in dispute, such as motive, intent, or an element of the charged offense . . . ." <u>Rose</u>, 206 N.J. at 160.  Motive is material whenever the defendant asserts his innocence.  <u>State v. Castagna</u>, 400 N.J. Super. 164, 178 (App. Div. 2008).

Here, the past threats were clearly relevant. Defendant threatened to assault the victim and burn down her house if she did not allow him to live there with her. The evidence provided "background" and helped to "complete[] the story" between the victim and defendant. See Rose, 206 N.J. 180 (quoting Green, 617 F.3d at 248-49) (concluding that these are other proper purposes for admitting evidence of other prior bad acts under Rule 404(b)). Defendant's threat to burn the house down was especially relevant in light of the lighter fluid-doused pajamas that defendant threw on the victim and the odor of lighter fluid in the house noted by the police officers. Moreover, these threats help prove defendant's motive and intent in attempting to murder the victim. According to defendant's merits brief, "defendant's argument was not that he did not attack [the victim]; instead, his argument was that he did not attempt to kill her." Thus, motive was material because defendant asserted his innocence as to the attempted murder charge. See Castagna, 400 N.J. Super. at 178.

The second prong – that "other acts" be similar in kind and occur close in time – "need not receive universal application in Rule 404(b) disputes." Williams, 190 N.J. at 131. This prong "was pertinent to the facts presented in [Cofield]" and can be limited to facts similar to that case. Ibid. Therefore, this prong need not be addressed here.

Under the third prong, the evidence of the other prior bad act must be clear and convincing. Here, the victim testified that defendant had previously threatened to assault her and burn down her house if she did not allow him to live with her. The jury would be free to determine whether her testimony was credible or not. Although the judge did not fully engage in a <u>Cofield</u> analysis as to the past threats, he did note that as to this prong, the victim's

> testimony will be before the court and is going to be determined by the jury. I don't have to make a determination as to that because the jury's going to determine as to whether her testimony regarding the relationship is, frankly, beyond a reasonable doubt, because that's the standard they're going to have to apply.

The jury found the victim credible. She testified extensively as to the details of the attack. She also testified as to defendant's threats: that he threatened to burn the house down if he was not living in it; that if she did not marry him he would assault her; and that he would kick her down a flight of steps. The victim's testimony regarding the threats to burn down the house were also corroborated by the police officers who entered the house, as they noted that they smelt lighter fluid.

The fourth prong under the <u>Cofield</u> test is whether the probative value of the evidence is outweighed by undue prejudice. 127 N.J. at 338. Under this

17

prong, "[s]ome types of evidence, . . . 'require a very strong showing of prejudice to justify exclusion. One example is evidence of motive or intent.'" Garrison, 228 N.J. at 197 (quoting State v. Skinner, 218 N.J. 496, 516 (2014)). Here, the probative value of the evidence of past threats was high because it put the entire attack in context – it helped to explain the past ongoing relationship between the victim and defendant and helped to prove that the attack was not an aberrant occurrence, but that defendant had the intent to attempt to commit murder. It also provided motive – defendant threatened that if he could not live in the house, than he would burn it down. The day before the attack, the victim made it clear that she would not be getting back together with defendant. The next morning he attacked her and threw lighter fluid-doused pajamas on her. The testimony of the past threats was "not so prejudicial that it had 'a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation of the issues in the case.'" Id. at 198 (quoting State v. Long, 173 N.J. 138, 163-64 (2002)).

The judge did not give a limiting instruction to inform the jury on the proper use of Rule 404(b) evidence. "[L]imiting instructions must be provided to inform the jury of the purposes for which it may, and for which it may not, consider the evidence of defendant's uncharged misconduct, both when the

evidence is first presented and again as part of the final jury charge." Rose, 206 N.J. at 161. But defense counsel did not object. Instead, defense counsel stated that the judge was reaching a "reasonable balance" in determining which evidence was admissible and which was inadmissible under Rule 404(b). Indeed, defense counsel consented to the admissibility of the evidence of previous threats.

The judge specifically asked if the State or defense wanted to request anything else or discuss any part of the final charge. The judge stated, "I gave everyone the prospective charge. I think I've included everything, [defendant's public defender], that you requested. . . . Is there anything else that you perceive? . . . Is there anything else with reference to the principle charge that you can see, request, or want to discuss?" Defense counsel replied, "Not at this time, Judge, no."

Although the judge did not give a limiting instruction, the doctrine of invited error bars any claim of prejudice. "Mistakes at trial are subject to the invited-error doctrine." State v. A.R., 213 N.J. 542, 561 (2013). Under this doctrine, "trial errors that 'were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal.'" State v. Munafo, 222 N.J. 480, 487 (2015) (quoting A.R., 213 N.J. at

561). Our Supreme Court declared "[t]o justify reversal on the grounds of an invited error, a defendant must show that the error was so egregious as to 'cut mortally into his substantive rights.'" State v. Ramseur, 106 N.J. 123, 282 (1987) (quoting State v. Harper, 128 N.J. Super. 270, 277 (App. Div. 1974)). Defendant cannot do that. Even if the past threats were not intrinsic, they would have been admissible under a Cofield analysis, to which defense counsel consented to their admissibility without the need for a limiting instruction.

We therefore see no plain error. We reach that conclusion especially because of the overwhelming evidence of guilt. See State v. Prall, 231 N.J. 567, 571-72 (2018) (holding that defendant's convictions would be affirmed despite absence of limiting instruction, use of bad act evidence during summations, and admission of hearsay because errors "were not capable of producing an unjust result because of the overwhelming weight and quality of the evidence against defendant").

## VI.

Lastly, defendant contends that the judge failed to properly weigh the aggravating factors because the judge did not consider NERA's "real-life consequences."

Sentencing determinations are reviewed on appeal with a highly deferential standard. State v. Fuentes, 217 N.J. 57, 70 (2014). The appellate court must not "substitute its judgment for that of the sentencing court." Ibid.

> The appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

NERA mandates a minimum term of eighty-five percent parole ineligibility on sentences for convictions of certain enumerated offenses, including attempted murder. N.J.S.A. 2C:43-7.2(d)(1). The period of parole ineligibility is "calculated based upon the sentence of incarceration actually imposed." N.J.S.A. 2C:43-7.2(b). On an application of the State, the sentencing court may sentence a defendant to an extended term of imprisonment if the court finds the defendant is a persistent offender. N.J.S.A. 2C:44-3(a). For a first-degree offense, the presumed extended term sentence is fifty years. N.J.S.A. 2C:44-1(f). But the sentencing court may impose a higher or lower sentence based on the balance of aggravating and mitigating factors. Ibid. Moreover, the

21

"sentencing and appellate courts must 'be mindful of the real-time consequences of NERA and the role that it customarily plays in the fashioning of an appropriate sentence[.]'" State v. Hernandez, 208 N.J. 24, 50 (2011) (quoting State v. Marinez, 370 N.J. Super. 49, 58 (App. Div. 2004)).

The judge found aggravating factor one, N.J.S.A. 2C:44-1(a)(1) (the nature and circumstances of the offense); two, N.J.S.A. 2C:44-1(a)(2) (the gravity and seriousness of harm inflicted); three, N.J.S.A. 2C:44-1(a)(3) (the risk that defendant will commit another offense); six, N.J.S.A. 2C:44-1(a)(6) (the extent of defendant's prior criminal record); and nine, N.J.S.A. 2C:44-1(a)(9) (the need to deter defendant and others). The judge found no mitigating factors. Despite defendant's contention, there is no reason to believe that the judge "did not consider NERA's real-time consequences." Defendant contends that the judge evaluated the aggravating factors without "articulating" that it was mindful of NERA's real-time consequences. But when the judge imposed sentence, he explicitly stated that it was subject to NERA, and accordingly, "[forty-two] years, six months would have to be served before . . . defendant would be eligible for parole . . . ." The judge's findings as to the aggravating factors are supported by credible evidence in the record. Thus, we see no abuse

of discretion in the sentence imposed, and the sentence does not shock our judicial conscience. <u>Roth</u>, 95 N.J. at 365.

To the extent we have not addressed any of defendant's arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2950-16T4